**WESTERN ADDITION COMMUNITY ORGANIZATION et al., Plaintiff,**

v.

**George ROMNEY, Secretary of the United States Department of Housing and Urban Development, et al., Defendants.**

No. 49053.

United States District Court,
N. D. California.

March 5, 1969.

Gilbert T. Graham, Peter E. Sitkin, Steven J. Antler, San Francisco, Cal., and Jack Greenberg and Michael Davidson, New York City, for plaintiffs.

Cecil F. Poole, U. S. Atty., and David R. Urdan, Chief Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION

SWEIGERT, District Judge.

When this court filed its December 16, 1968 Memorandum of Decision, 294 F. Supp. 433, resulting in the preliminary injunction of December 26, 1968, the record before the court showed that, although required to do so by law (Title 42 U.S.C. §§ 1455(c) (1) and (c) (2)), the Secretary of Housing and Urban Development, had never made any determination one way or the other, concerning whether the local agency's relocation plan of August 15, 1967, was such as to satisfactorily assure him that decent, safe and sanitary dwellings, as described by subsection (c) (1), were available for the relocation of individuals and families displaced by the Western Addition Area A–2 Project.

Only on July 29, 1968, nearly a year after submission of the local agency's relocation plan, seven months after the commencement of this suit and more than a month after this court's order of June 26, 1968, did the Secretary make any such determination.

On July 29, 1968, the Secretary, then Robert Weaver, acting through his Regional Administrator, Robert B. Pitts, made what purported to be an expression of his satisfaction with the local agency's assurances.

However, this belated determination was expressly predicated upon four specified conditions which had not then been met.

These contingencies were: (a) availability and utilization of relocation aids under a Housing and Urban Development Act of 1968 and related appropriation bills, which, although then pending in the Congress, had not yet been passed; (b) adoption by the Board of Supervisors of a resolution satisfactory to the Regional Administrator, specifying the purposes for which money previously appropriated ($300,000) shall be expended, including amounts for rent supplements, and the organizational unit or units having control of such appropriations and expenditures; (c) the further implementation of Section 221(d) (3) housing in Western Addition A–2 and two other projects in accordance with the statements set forth in Pitts' letter of July 19, 1968 to SFRA; (d) appropriate and satisfactory phasing of relocation activities in an orderly and progressive manner so that site occupants, to the extent feasible, may be relocated within the project area with a minimum of hardship, and that such phasing be over such period of time (presently estimated to be approximately five years) and may be needed for provision of the required housing.

Thus, the Secretary's purported expression of satisfaction was so obviously and completely made contingent on future accomplishments and events that,

as the court pointed out in its previous Memorandum of Decision, the letter was not at all an expression of satisfaction but rather, an implied expression of his then "dissatisfaction" with the local relocation plan.

The court, therefore, had no other course but to hold that the Secretary was not proceeding in compliance with the Housing Act and that further financing of the project should be enjoined until he brought himself into compliance.

The case is now before the court in a different posture. The Secretary has moved the court to dissolve the preliminary injunction of December 26, 1968 upon the ground that the Secretary is now in compliance with Sections 1455(c)(1) and (c)(2) of the Housing Act, pointing out that as of January 29, 1969, he has made an unqualified and unconditional determination that the local agency's relocation plan and its assurances of available relocation housing for displacees are now satisfactory to him.[1]

The Secretary's determination has been made on the basis of certain further assurances given to him on January 24, 1969 by the local agency purporting to show that the four contingencies set forth in the Secretary's letter of July 29, 1968, have now been met. (See, "Response of San Francisco Redevelopment Agency Regarding Removal of Conditions to Finding of Satisfaction with Relocation Assurances"—attached as an Exhibit to defendants' motion filed herein January 31, 1969.)

The findings of the Secretary, drawn by his Regional Administrator, Pitts, from these further assurances, are set forth in Exhibit 1 to the deposition of Pitts, taken by and placed in the record by plaintiffs.

In substance and effect, they are as follows:

(a) with respect to the first condition, availability and utilization of new federal relocation aids, that the Housing and Urban Development Act of 1968 was enacted as Public Law 90–448, 90th Congress, S. 3497, and was signed into law by the President on August 1, 1968; that the new law contains many provisions designed to promote new and rehabilitated housing, particularly for low and moderate income families; that of particular importance among the new provisions are the FHA Section 235 and 236 interest reduction payment programs, FHA Section 237 special credit assistance program for families of low or moderate income, and FHA Section 106 pre-construction cost assistance to non-profit sponsors of low and moderate income housing; that financing for these and other new law provisions are contained in the Department's 1969 regular Appropriation Act, Public Law 90–550, 90th Congress, H.R. 17023, approved October 4, 1968, and the Department's 1969 Supplemental Appropriation Act, Public Law 90–608, approved October 21, 1968; and that the local agency is presently utilizing some of the provisions of the new law and proposes to utilize others, and such actual and proposed utilization is satisfactory;

(b) with respect to the second condition, action by the Board of Supervisors of the City and County of San Fran-

---

1. This determination is set forth in a letter of the Regional Administrator of HUD, Robert B. Pitts, acting for the Secretary, now George Romney, to the Executive Director of the local agency, M. Justin Herman, dated January 29, 1969, informing the local agency that "By reason of the subsequent enactment of Federal legislation, appropriation acts, local ordinances and resolutions, together with certain additional data and information which you have since submitted [namely the agency's 'Response' of January 24, 1969], I have found that said four (4) contingencies [contained in the July 29, 1968 letter of Pitts to Herman] have occurred, been complied with, or are no longer applicable and that said assurances [submitted by the local agency on August 15, 1967] as supplemented, are satisfactory." (Bracketed explanations added.)

cisco, that on May 14, 1968, the Board of Supervisors adopted Resolution No. 353–68, declaring its policy to appropriate certain local property tax revenues for use in relocating persons displaced by urban redevelopment and urban renewal projects; that on August 19, 1968, the Board of Supervisors adopted Resolution No. 581–68, specifying the purposes for which money previously appropriated ($300,000) would be expended, including the amount of $100,000 for local rent supplements, and detailing the organizational unit or units having control of such expenditures; and that the two resolutions, taken together, are deemed satisfactory for the purpose of evidencing local government commitment to a program of local rent supplement and of providing an acceptable program of local rent supplements for an initial period of eighteen months;

(c) with respect to the third condition, further implementation of FHA Section 221(d) (3) housing in accordance with letter of July 19, 1968 from Regional Administrator Pitts to Executive Director Herman, that it is contemplated that the new Section 236 interest reduction payment program for rental and cooperative housing for lower income families will ultimately supplant the FHA Section 221(d) (3) below market interest rate program, and, therefore, future construction of low and moderate income rental housing in the project area will be under the 236 program rather than the 221(d) (3) program; that there are two 221(d) (3) projects which will provide 218 units of housing already under construction in the project area, and there is presently pending before HUD applications for four Section 236 projects which will provide 344 units of housing in the project; that the local agency represents that applications will be filed in the near future for 279 units, and long range, the local agency states that an additional 16 sites for 1673 units will be made available to sponsors of low and moderate income priced housing within the

project; that the letter of July 19, 1968 was concerned primarily with three matters—(1) land pricing by the local agency of urban renewal project land to be disposed of to sponsors, of low and moderate income housing under FHA programs, (2) elaborateness of design so as not to exceed acceptable project cost for FHA purposes, and (3) continued use of FHA Section 221(d) (3) below market interest rate program by San Francisco as a solution to the housing of low-moderate income families; that with respect to land pricing, that portion of the July 19, 1968 letter which relates to land pricing has been superseded by HUD Circular No. RHA 7214.1 of November 4, 1968, and the local agency has stated that it is willing to work under and in accordance with the Circular; that the matter of elaborateness of design is one for a case by case consideration, and is not pertinent to this determination; that with respect to continued use of the FHA Section 221(d) (3) below market interest rate program, insofar as future reliance for low and moderate income housing in the project will be upon the FHA Section 236 interest reduction payment program, rather than Section 221(d) (3) below market rate interest program, concern as to the limited effectiveness of the Section 221(d) (3) program is largely moot; and that the local agency is making appropriate further implementation of the pertinent FHA low and moderate income rental housing programs in accordance with the applicable provisions of the Regional Office letter of July 19, 1968; and

(d) with respect to the fourth condition, appropriate and satisfactory phasing of relocation, that the local agency carries on its relocation activities in conjunction with other development activities in three phases, according to land area rather than by time periods; that data supplied by the local agency indicates that in Phase I 941 individuals and families are to be displaced, and there exist or are being provided for

them 1776 dwelling units; that in Phase II 1073 individuals and families are to be displaced, and there exist or are being provided for them 2727 dwelling units; that in Phase III 1989 individuals and families are to be displaced, and there exist or are being provided for them 5087 dwelling units; that the local agency's reliance upon vacancies in existing dwellings to satisfy relocation needs is acceptable; and that the phasing program set forth in the local agency's report (Response) appears to be reasonably feasible of accomplishment and is satisfactory for the purpose of complying with the fourth condition of the July 29, 1968 letter.

It is true that plaintiffs take issue with the local agency's relocation plan, its assurance of relocation housing and with the Secretary's findings concerning the satisfactoriness thereof.

In addition to offering in evidence the deposition of Pitts, Isaacson and Conlin, plaintiffs offered the testimony of Dr. Wallace Smith, Assistant Professor of Business Administration, University of California.

This evidence, however, merely indicates that the record is such as to be subject to different inferences and is, therefore, controversial. The Secretary has drawn one inference while the plaintiffs argue to the contrary.

■ The Federal Housing Act entrusts the determination of the satisfactoriness of the local agency's assurances of available relocation housing to the Secretary of the Department of Housing and Urban Development. The requirement of Section 1455(c) (2) is that, as a condition to further assistance, the Secretary shall require, within a reasonable time prior to actual displacement "satisfactory assurance" by the local public agency that decent, safe and sanitary relocation housing is available.

It will be observed that the section does not make continuance of federal assistance dependent upon the existence in fact of available relocation housing. Rather, the requirement is merely that the Secretary, exercising his sound discretion and presumed expertise, be "satisfied" with the local agency's "assurances" in that respect.

The word "assurance" (especially when qualified by the word "satisfactory") does not mean an absolute certainty of the factual situation in question. Rather, the term is used in a subjective sense, meaning that the subject matter, considering the appearances, reasonably seems to be sure although eventually it could conceivably be found not to be so. Sidle v. Baker, 52 Ohio App. 89, 3 N.E. 2d 537, (Ohio Ct. of Appeals, 1936).

■ Since the statute vests the function and responsibility squarely upon the Secretary, the judicial function is narrowly limited to ascertaining whether the Secretary has made the determination required of him by law and, if so, whether he has acted in apparent good faith, reasonably rather than arbitrarily and with some factual basis for his decision. If so, judicial review can go no further. The court may not, and should not, substitute its judgment for that of the Secretary—even if the court might believe that the Secretary could have made a different decision concerning the satisfactoriness of the local agency's relocation plan and assurances.

■ Upon the record now before the court and the Secretary's present unqualified, unconditional expression of satisfaction with the local agency's relocation plan and assurances of available relocation housing, the court cannot go so far as to hold that the Secretary's exercise of his statutory function, primary responsibility and sound discretion is wholly arbitrary, irresponsible and without factual basis. To do so in this case would be to overstep the bounds of judicial review of executive action, to substitute the judgment of a court for that of the responsible and presumably more

expert administrators and to involve the judiciary in the complexities of urban renewal—a task for which the judiciary is neither intended nor equipped and an involvement which would in the long run do more harm than good.

Since the case is before the court at the preliminary injunction stage, the balance of the equities must be carefully considered.

Against the possibility of some individual relocation hardship resulting from error of judgment on the part of the federal or local administrators, must be weighed the public interest which will be ultimately served by completion of the Western Addition A–2 Project—the kind of slum clearance and urban renewal project which, as stated by the Congress in 42 U.S.C. § 1442, local communities should be encouraged and assisted to undertake.

A great deal of time, effort and money, both local and federal, have already been expended upon the project. It could be disastrously affected by stoppage in the middle of its course. Preliminary injunctive interference at this critical stage of the project should not be continued longer than clearly necessary.

The injunction of December 26, 1968, expressly provided that it would remain in effect only "until the Secretary could show that the plan for relocation of said residents is in fact satisfactory to him."

Because of the changed posture of the case, resulting from the January 29, 1969 unqualified statement of approval and satisfaction of the Secretary of Housing and Urban Development, the court concludes that the preliminary injunction should be and is hereby dissolved. Ruling on defendants' motion for summary judgment under Fed.R.Civ.P. 12(b) is reserved.

It is ordered that George Romney be substituted for Robert Weaver as defendant Secretary of the United States Department of Housing and Urban Development.