Dr. and Mrs. Robert A. KATSEV et al., Appellants,

v.

William T. COLEMAN, Jr., et al., Appellees.

No. 75–1350.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1976.

Decided Feb. 9, 1976.

John J. Allan, Clayton, Mo., for appellant.

Kathryn A. Oberly, Atty., Dept. of Justice, Washington, D. C., and Thomas H. Pearson, Kirkwood, Mo., for appellees.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,[*] and BRIGHT, Circuit Judge.

GIBSON, Chief Judge.

Plaintiffs, named individuals on behalf of themselves and a loosely designated class residing in or near the site of the proposed continuation of highway U–725, an innerbelt freeway in St. Louis County, Missouri, appeal from the District Court's [1] grant of summary judgment denying declaratory and injunctive relief in their attempt to halt construction of a segment of U–725. Defendants are the Secretary of Transportation, United States Department of Transportation (DOT), the Missouri regional administrator of the Federal Highway Administration (FHWA), the Missouri State Highway Commission (MSHC), and the MSHC's Chief Highway Engineer.

Construction of highway U–725 was instituted following a St. Louis County bond issue in 1955. The project in 1967 was incorporated into the MSHC's federal-aid highway program. When completed, the freeway will connect U.S. Highway 40 on the south with interstate highway I–270 on the north, intersecting Page Avenue, Natural Bridge Road and other east-west arteries. The section from the Highway 40 southern terminus to Page Avenue, approximately one-half of the freeway, has been completed. The remaining stretch of 6.6 miles will be constructed in two segments, a "southern" (Page Avenue to Natural Bridge Road) and a "northern" (Natural Bridge Road to I–270). Plaintiffs' complaint concerns only the southern segment.

In the original three-count complaint filed September 27, 1974, plaintiffs alleged (I) that the federal defendants violated provisions of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq. (1970), by improperly delegating the task of preparing the environmental impact statement (EIS) to the state highway administrators and by improperly circulating the draft of the EIS; (II) that the federal and state defendants failed to conduct separate public hearings for the second leg of the southern segment (Wood Ave. to Natural Bridge Rd.) in violation of the Federal-Aid Highway Act, as amended, 23 U.S.C. § 101 et seq. (Supp. III, 1973); and (III) that the state defendants failed to study the needs of the plaintiffs (especially the mobile home owners among them) for relocation assistance in order to provide the federal defendants "satisfactory assurances" that relocation assistance will be available, as required by provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA), 42 U.S.C. § 4601 et seq. (1970).

This matter was set for trial on February 18, 1975, but the parties then agreed that the case would be submitted on defendants' motion for summary judgment, a stipulation of some 70 facts, memoranda and extensive exhibits. On March 26, 1975, in an unreported memorandum opinion, the District Court granted summary judgment without certifying the plaintiff class, holding that the defendants had complied with all applicable statutes and regulations. In the same opinion, the court denied plaintiffs leave to amend their complaint, requested March 17, 1975, for the reason that it was requested too late (one month after submission) and would be contrary to the interests of justice.[2]

---

[*] Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

[1.] The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

[2.] Plaintiffs sought to delete certain claims and add others to their complaint. As amended,

the complaint in its entirety would have challenged (1) the defendants' failure to file the EIS prior to obtaining location approval for the southern segment on February 5, 1970; (2) their failure to submit a "design study report" on the *northern* segment prior to obtaining design approval on January 29, 1971; and (3) their failure to conduct a separate public de-

On this appeal plaintiffs have chosen not to challenge the propriety of the District Court's denial of leave to amend. Rather, they contend merely that the court erred in granting summary judgment for the reason that the issues rest upon unresolved questions of fact. Specifically, on appeal they argue (1) that the federal defendants' failures to file the EIS before obtaining corridor approval for the southern segment in February, 1970, and to discuss an alternative highway alignment in the EIS, constituted violations of NEPA, and (2) that the relocation studies and plans produced by the state and approved by the FHWA fail to comply with § 210 of the URA, 42 U.S.C. § 4630.[3] These issues plaintiffs characterize as questions of fact rendering summary judgment inappropriate. We consider them to be questions of law and affirm the summary judgment.

 At the outset, it is apparent that the plaintiffs' two contentions of noncompliance with NEPA are not properly before this court for appeal. Conse-

quently, we will not consider them except to note in passing their equally apparent lack of merit. Plaintiffs' first contention, now moot, is that the EIS should have been filed before corridor approval was obtained on February 5, 1970. This contention is identical to the first claim they sought to raise in their amended complaint and was rejected by the District Court without reaching the merits. Plaintiffs have failed to appeal from the court's adverse ruling on their attempt to amend—a ruling that we believe was fully justified by the untimeliness of the request. *See, e. g., Inland Container Corp. v. Atlantic Coast Line R. R.,* 266 F.2d 857, 861 (5th Cir. 1959). Moreover, count I of the original complaint does not include, and cannot be expanded to encompass, the contention that the EIS should have been filed prior to obtaining corridor approval. Indeed, plaintiffs concede that if the case were remanded for trial, the complaint would have to be amended to enable them to present their new NEPA claims. Thus, these claims will not be considered on appeal.[4]

sign hearing for the section of the southern segment extending from Wood Ave. to Natural Bridge Rd. (about ¼ mile).

**3.** The Act provides in relevant part:

Notwithstanding any other law, the head of a Federal agency shall not approve any * * * contract * * * with * * * a State agency, under which Federal financial assistance will be available * * * [for] any program or project which will result in the displacement of any person on or after January 2, 1971, unless he receives *satisfactory assurances* from such State agency that—

(1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons * * *;

(2) relocation assistance [information and advisory] programs * * * shall be provided to such displaced persons;

(3) within a reasonable period of time prior to displacement, decent, safe, and sanitary replacement dwellings will be available to displaced persons * * *. (Emphasis added.)

**4.** On the merits, as defendants note, it is not surprising that the EIS was not written prior to February, 1970, as NEPA did not come into effect until one month before, January 1, 1970.

The first draft of the EIS covering both the northern and southern segments was submitted for review in April, 1971; the final draft was submitted to the FHWA in February, 1972, and was finally accepted by DOT on July 9, 1974. Defendants contend that the plaintiffs' claim was mooted by the filing of the EIS, since the only relief that would have been available had no EIS been written would have been an injunction halting work until the EIS could be filed.

Moreover, in response to the claim that late preparation rendered the EIS no more than a collection of post hoc rationalizations for decisions already made, defendants contend that NEPA's purposes are yet being served in the instant case. The federal government will not be contractually obligated to reimburse the state for the project until the segment receives "plans, specifications and estimates" (PS&E) approval. *Lathan v. Brinegar,* 506 F.2d 677, 686 (9th Cir. 1974). Thus, the federal officers charged with approving the project can yet benefit from the EIS and make a more informed final decision. Further, even demonstrated pre-existing bias on the part of government officials does not necessarily render their facial compliance with NEPA a pretense. *Environmental Defense Fund, Inc. v. Corps of Engineers,* 470 F.2d 289, 296 (8th Cir. 1972),

■ Plaintiffs' second contention—that the defendants failed to include in the EIS a discussion of an alternative highway alignment proposed by various public hearing witnesses, using the abandoned Terminal Railroad right of way parallel to the freeway corridor—is not properly before this court for appeal either. That allegation was not considered by the District Court.[5] We have reviewed the complaint and the record and again find no foundation for the claim that the EIS was deficient. Thus, the District Court was not required to consider the claim in ruling on the motion for summary judgment and the claim cannot be asserted on appeal.[6] *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 184 (8th Cir. 1973).

The only issue properly before this court on appeal is whether the defendants have complied with the provisions of the URA requiring the state, prior to federal approval, to provide "satisfactory assurances" that adequate relocation assistance and replacement dwellings will be available for displaced persons, 42 U.S.C. § 4630. The District Court held that the defendants adequately complied with the statutes and regulations relating to relocation assistance and found that there is no factual basis for plaintiffs' contention. On appeal the plaintiffs contend that the question whether or not the defendants have complied is one of fact and is not amenable to summary judgment. Specifically, they charge that the state defendants have not produced necessary studies to determine the relocation needs of the class, and absent such preparation the Secretary could not have accepted the assurances as "satisfactory" under § 4630.

■■ Our review of the record convinces us that the District Court's finding is correct. The state prepared an extensive relocation plan. As of the date the case was submitted to this court, the MSHC had relocated 312 persons, moved 105 homes and relocated 4 businesses from the southern segment. Almost 1,300 persons and 415 residences have been relocated from the northern segment. In preparing the study, the state defendants interviewed relocatees and tabulated their needs, conducted a spot check of 5 percent of the available housing in the area and considered the availability of financing. The facts outlining the state's activities complying with the URA were not in dispute and they adequately supported the District Court's holding, properly made in the form of a summary judgment.[7] Fed.R.

---

*cert. denied,* 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973). The legal test for NEPA compliance is "one of good faith objectivity rather than subjective impartiality." *Id.*

**5.** The plaintiffs raised the point during oral argument in the district court to support their primary argument that the federal defendants had improperly delegated to the state the task of preparing the EIS—an argument now abandoned. *See, e. g., Iowa Citizens for Environmental Quality, Inc. v. Volpe,* 487 F.2d 849 (8th Cir. 1973).

**6.** The defendants note that the Terminal Railroad alternative was in fact discussed in the EIS, albeit not in the section titled "alternatives," discussing five other possible routes. In the circumstances, the railroad alternative was sufficiently described. *Iowa Citizens for Environmental Quality, Inc. v. Volpe,* 487 F.2d 849, 852–53 (8th Cir. 1973); *Environmental Defense Fund, Inc. v. Corps of Engineers,* 470 F.2d 289, 297 (8th Cir. 1972), *cert. denied,* 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973). *See also Fayetteville Area Chamber of Com-*

*merce v. Volpe,* 515 F.2d 1021, 1027–28 (4th Cir.), *cert. denied sub nom. Interstate 95 Committee v. Coleman,* 44 U.S.L.W. 3238, 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 140 (1975).

The EIS lists several reasons why the Terminal Railroad route is not feasible: the right of way is too narrow to accommodate the freeway; it would require two additional sharp curves in the roadway; it would require as many properties to be taken as would any of the other alternatives; and approximately 1000 feet of freeway already constructed would have to be abandoned. The state engineers rejected this alternate route as palpably unreasonable in view of comparative right of way and construction costs, design configurations, and safety requirements.

**7.** The plaintiffs' claim that members of the class living in mobile homes must be relocated to other mobile home sites in the same county (where space for such housing is extremely scarce) finds no support in the statute. The purpose of the URA is to provide for "fair and equitable treatment of persons displaced * * *

Civ.P. 56; *see Hanley v. Volpe,* 322 F.Supp. 1306 (E.D.Wis.1971).

With respect to the federal defendants, the District Court reasonably concluded that the Secretary's implicit acceptance of the state's assurances as "satisfactory" had a factual basis. Section 4630 does not require the existence in fact of available relocation housing. By its terms, it requires merely that the Secretary be satisfied with the local agency's assurances. Thus, the reviewing court's function is narrowly limited to ascertaining whether the Secretary's acceptance of the assurances was within the range of sound administrative discretion and was not arbitrary, capricious or otherwise not in accordance with law. *Western Addition Community Organization v. Romney,* 320 F.Supp. 308, 312 (N.D.Cal.1969); 5 U.S.C. § 706(2) (1970). The plaintiffs have not borne their burden of demonstrating that the District Court's ruling was erroneous in this regard.

The judgment of the District Court is affirmed.

in order [to avoid] disproportionate injuries as a result of programs designed for the benefit of the public as a whole," 42 U.S.C. § 4621; it is not intended to guarantee identical substitute housing for all relocatees. On the contrary, the record indicates that the state prepared a supplemental study dealing specifically with the shortage of mobile home sites in St. Louis County.