518 F.Supp. 935 (1981)
Maria MEJIA, Carmen Gonzalez, Ary Uhart, Nilda Martinez, Yolanda Chimielewski, Hermino Soto, Ana Del Rios, Venitta Pruitt, Miguel Garcia, Michaeline Sikora, Joseph Kass, Francisco Lopez, and Northwest Community Organization, Plaintiffs,
v.
The UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Samuel R. Pierce, Jr., Elmer C. Binford, the City of Chicago, and Jane M. Byrne, Defendants.
No. 81 C 0961.
United States District Court, N. D. Illinois, E. D.
June 29, 1981.
*936 Alexander Polikoff, Douglas W. Cassel, Jr. and Howard A. Learner, Sara E. Johnson, Gordon Waldron, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.
Stanley Garber, Corp. Counsel, Asst. U. S. Atty., Steven A. Miller, Chicago, Ill., Richard C. Stearns, U. S. Dept. of Housing & Urban Development, Washington, D. C., Robert R. Tepper, Leonard Schanfield, Rosenthal & Schanfield, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
CROWLEY, District Judge.
This matter comes before the court on cross-motions for summary judgment by all parties.[1] For the reasons stated below, the defendants' motions for summary judgment are granted.
The basic facts underlying this controversy are related in a Memorandum Opinion *937 and Order dated April 3, 1981, which denied plaintiffs' motion for preliminary injunction. Plaintiffs are attempting to enjoin the City of Chicago from spending federal funds for a commercial redevelopment project. They also seek a declaratory judgment that the Department of Housing and Urban Development (HUD) illegally released the funds for the project under the Community Development Block Grant program (CDBG), Title I of the Housing and Community Development Act of 1974 (HCDA), 42 U.S.C. § 5301 et seq.
The crux of this case is the validity of the City's plans submitted in its application for the funds. Plaintiffs allege that the City's application is not valid for three reasons. First, they claim it does not provide them with a reasonable opportunity to relocate in their immediate neighborhood and therefore violates the HCDA, 42 U.S.C. § 5304(a)(4)(C)(i). Second, plaintiffs maintain the plan does not comply with sections of the Uniform Relocation and Real Property Acquisition Act of 1970 (URA), because it does not provide satisfactory assurances that comparable replacement housing exists for persons displaced from the project site. 42 U.S.C. §§ 4625(c)(3) and 4630. Finally, plaintiffs submit that an appropriate environmental review was not conducted pursuant to the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq.
Plaintiffs allege separate causes of action against the federal and city defendants. The claim against the federal defendants is for judicial review of agency action under the Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A). Plaintiffs maintain that it was arbitrary and capricious for HUD to approve the City's inadequate application for funds. The counts against the City defendants are based on 42 U.S.C. § 1983. Plaintiffs contend the City violated the provisions of the HCDA, URA and NEPA in its application for block grant funds by not adequately assuring relocation for plaintiffs in their immediate neighborhood.
A substantial portion of this dispute involves the legal issue of determining what the relevant statutes require of the City. The essential positions of the parties have not changed since the motion for preliminary injunction. Plaintiffs submit that before HUD can release funds for this project, the City must provide adequate assurances that the plaintiffs will have a reasonable opportunity to relocate in the immediate neighborhood. Because they contend the City's plan is only "boiler plate" language with no basis in fact, plaintiffs assert the City has not provided adequate assurances and HUD arbitrarily approved the City's application. Specifically, plaintiffs argue that the City has improperly relied on the availability of subsidized housing which does not qualify as comparable replacement housing, is not yet constructed and will not be in the immediate neighborhood. Further, plaintiffs contend that the City's reliance on a 6.6% vacancy rate is improper because the actual vacancy rate in the immediate neighborhood is nearly zero. Consequently, plaintiffs maintain that they have virtually no possibility of relocating in the immediate neighborhood. Because they informed HUD of their objections and the basis for them in an administrative complaint, plaintiffs argue that the federal defendants' approval of the City's application was arbitrary and capricious.
The defendants' response to plaintiffs' contentions is primarily a disagreement over the proper interpretation of the statutory obligations that premise plaintiffs' argument. HUD and the City argue that plaintiffs are merging the language and requirements of two separate statutes to create an obligation that does not exist. HUD contends that a reasonable opportunity to relocate in the immediate neighborhood is only one of many objectives, not a requirement, provided in the HCDA. Additionally, HUD contends "comparable dwellings" under the URA need not be in the immediate neighborhood. Thus, defendants submit that evidence of the lack of an opportunity to relocate in the immediate neighborhood does not render the City's plan invalid. Further, because the City did *938 comply with the HCDA and URA in all other respects, HUD argues that approval of the plan and release of the funds was not arbitrary and capricious.
This issue of the exact requirements of the HCDA and URA was addressed in the preliminary injunction proceeding. Its resolution remains fundamental to this final disposition of the case. There is no dispute that the URA "comparable dwelling" is not required to be a dwelling in the immediate neighborhood. 42 U.S.C. §§ 4630 and 4625; 24 C.F.R. § 42.45. The only source of the "immediate neighborhood" qualification is the HCDA, 42 U.S.C. § 5304(a)(4)(C)(i). Because that section is rather long, a detailed analysis of it is necessary.
Subsection (a)(4)(C) is one of three subsections that describe what must be included in a housing assistance plan. Under (a)(4)(C), the plan must "indicate[] the general locations of proposed housing for lower-income persons." Subsection (a)(4)(C) also provides three objectives for determining the locations of proposed housing. In (i), the objective is "furthering the revitalizing of the community." That section continues by suggesting examples of what revitalizing should entail: restoration and rehabilitation of stable neighborhoods and reclamation of housing stock where feasible through the use of a "broad range of techniques for housing restoration." After all this language, section (i) reads, "including provision of a reasonable opportunity for tenants displaced as a result of such activities to relocate in their immediate neighborhood."
Although more careful drafting may have clearly identified the exact reference and meaning of the "reasonable opportunity" clause, the clause should not be considered merely an objective. The objective provided in the section is to revitalize the community. If the techniques suggested result in the displacement of tenants, subsection (i) requires a provision in the plan for a reasonable opportunity to relocate in the immediate neighborhood. Yet this conclusion that the "reasonable opportunity" is not an objective, but some sort of requirement does not resolve the issue of what a reasonable opportunity is in this case.
Plaintiffs agree that a "reasonable opportunity" does not mean a guarantee. Thus, they are not arguing that the City must relocate them in the immediate neighborhood. Yet the reason plaintiffs contend the plan does not contain a reasonable opportunity is because there is in fact no opportunity. In the denial of the preliminary injunction, it was noted the HCDA cannot be read to require an opportunity of relocation (reasonable or otherwise) if no opportunity can actually be provided. If it were so read, then the very project designed to help alleviate that kind of problem would be impossible. The plaintiffs suggest that in this situation, the City must provide the replacement housing in the immediate neighborhood under its "houser of last resort" authority in 42 U.S.C. § 4626(a); 24 C.F.R. § 42.601 et seq. However, that authority is found in the URA, not the HCDA, and it is triggered only if comparable replacement housing is not available. As earlier indicated, comparable replacement housing need not be in the immediate neighborhood. Thus, assurances from the City that it will use houser of last resort authority are not required when only the immediate neighborhood provides no relocation opportunity.
The same conclusion as in the preliminary injunction decision must be reached. Unless the purposes of the HCDA are to be frustrated, the reasonable opportunity to relocate in the immediate neighborhood must be read to require assisting such relocation if housing is available.[2] Thus, the fact that there is no opportunity to relocate in the immediate neighborhood does not alone render the City's plan invalid.
*939 This resolution of the legal issue of the City's obligations under the HCDA and URA virtually resolves the defendants' motions for summary judgment. The City's motion simply argues that it is entitled to judgment because its plan and application complied with the statutory requirements.[3] In regard to the HCDA and URA, the plaintiffs' only argument centered on the lack of a reasonable opportunity to relocate in the immediate neighborhood. Because that is not a requirement when there is no housing available, the City has complied with the HCDA and URA. With respect to the NEPA count, the plaintiffs have not argued any new grounds to support their claim. Thus, the reasons stated in the preliminary injunction opinion continue to support a conclusion that the City has not violated NEPA. The City defendants are entitled to summary judgment on Counts II and III.
Turning to the federal defendants' motion, since the City's plan is not invalid because of the unavailability of immediate neighborhood relocation, the only other component of plaintiffs' argument is that HUD's experience in monitoring past relocation performance cannot form a factual basis for face value acceptance of the City's assurances under the URA. Plaintiffs argue the monitoring has been only random and inadequate. However, this court's function here is a very narrow one: "ascertaining whether the Secretary's acceptance of the assurances was within the range of sound administrative discretion and was not arbitrary, capricious or otherwise not in accordance with law." Katsev v. Coleman, 530 F.2d 176, 181 (8th Cir. 1976). Even if the HUD monitor was relatively inexperienced and the monitoring somewhat limited, the court cannot conclude that HUD's reliance on that monitoring was arbitrary and not within sound administrative discretion. Thus, HUD's release of the funds was proper and the federal defendants are entitled to summary judgment on Count I.[4]
Accordingly, defendants' motions for summary judgment are granted and plaintiffs' motion for same is denied.
NOTES
[1] This matter originally came before the court on plaintiffs' motion for preliminary injunction. That motion was denied for the reasons stated in a Memorandum Opinion and Order dated April 3, 1981. The parties fully briefed a motion for reconsideration. However, because of the importance of a prompt resolution of this matter, the parties expedited the compilation of the administrative record and the taking of discovery. Consequently, this matter is before the court in a posture for final disposition upon consideration of the briefs on the motion for reconsideration, the administrative record, stipulated facts and nine depositions.
[2] In their motion for reconsideration, plaintiffs noted that the April 3 Opinion seems to consider the slum and blighted area coextensive with the immediate neighborhood. Yet this confusion would not change the result reached here, because the same reasoning applies: the lack of relocation housing in the immediate neighborhood should not frustrate the sorely needed project development when all other assurances have been made under the URA.
[3] The City defendants also moved to dismiss the counts against them based on four arguments: 1) violation of a federal statute for which a private right of action does not exist cannot constitute a violation of 42 U.S.C. § 1983; 2) plaintiffs have suffered no injury or deprivation of rights; 3) plaintiffs' claims do not present a constitutional question; and 4) there is no reason for fashioning an independent remedy under 42 U.S.C. § 1983 because the APA protects plaintiffs' rights. However, the first, third and fourth arguments are directly contrary to the teaching of Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

At a conference held in this case, the court expressed some reservations concerning the § 1983 actions, citing Chesapeake Bay Foundation v. Virginia State Water Control Bd., 501 F.Supp. 821 (E.D.Va.1980). Those reservations were twofold. The first concerned the possible inconsistent results of an APA review of HUD's actions and a full review under § 1983 of the City's actions. The second question raised was the current existence of injury. These issues led the Chesapeake Bay court to conclude that no separate § 1983 action existed in that case. However, the plaintiffs have persuasively argued that the statutory and administrative framework involved in Chesapeake Bay is not the same nor analogous to this case and therefore that court's conclusion should not be reached here.
[4] In the current round of briefs the plaintiffs have not stressed their position in Count IV against the federal defendants. For the reasons stated in the Opinion and Order of April 3, 1981, the federal defendants are entitled to summary judgment on Count IV also.