JERRY E. SMITH, Circuit Judge:
Jackalene Johnson and Dawan Every sued the City of Thibodaux and seven officers-in their official and individual capacities-for unlawful arrest and excessive force under 42 U.S.C. § 1983. The jury returned a verdict for the officers. The district court denied plaintiffs' motion for judgment as a matter of law ("JML").
We reverse and remand the denial of JML as to Johnson's unlawful-arrest claims against Stephen Amador, Adrian Buchanan, Paul Thibodeaux, and Jeremy Gaudet; in all other respects, we affirm.
I.
Johnson and Every were riding in a truck with Kelly Green and Latisha Robertson, the driver. Officer Amador of the Thibodaux Police Department recognized Robertson and knew she had an outstanding warrant. He stopped the truck, asked Robertson to exit, and handcuffed her. Amador could not put Robertson into his car because his dog from the K-9 unit was in the backseat.
While Amador was tending to Robertson, Every opened her door. Amador told her to get back in, and she complied. A few minutes later, several more officers arrived, including Buchanan, Gaudet, and Thibodeaux. An officer (it is unclear which one) then placed Robertson into the back of a patrol car.
Amador and Buchanan approached the truck and asked the passengers for identification. Green said she did not have any, but she provided her name and birthdate. She was not arrested. Johnson and Every refused to identify themselves; instead, they sat in the truck, using their cell *730 phones. The officers arrested them for resisting an officer by refusing to identify themselves during the course of a supposedly lawful detention, an alleged violation of Louisiana Revised Statute 14:108.
The officers pulled Johnson and Every from the truck and forced them to the ground. According to Every, Buchanan pulled Every from the truck by her head and hand. Johnson said that Buchanan opened her door, yanked her from the truck, and slung her to the ground. Gaudet and Thibodaux testified that they came over to assist in the arrests.
Though the officers said that Johnson and Every yelled obscenities throughout the encounter, Johnson maintains she was silent. Buchanan said that as he handcuffed Every, she kicked, yelled, and threatened to have him fired. Officer Christopher Bourg, who only then arrived, walked Every to his car after she had been subdued and placed on the ground. On the way there, Every began to run, so Thibodeaux used his Taser to subdue her. Officer John Sutton, a supervising officer, arrived to prepare a use-of-force report. The officers took Johnson and Every to jail.
II.
Plaintiffs brought several § 1983 claims against the city and, in their official and individual capacities, Amador, Bourg, Buchanan, Gaudet, Rebecca Shaver, Sutton, and Thibodeaux (collectively the "officers"). Against the officers, plaintiffs averred that their Fourth Amendment rights had been violated by the allegedly unlawful arrest and excessive use of force. Against the city, plaintiffs claimed that the excessive use of force was the result of the city's failure to train.
Before trial, plaintiffs filed several motions in limine seeking to exclude the reports and testimony of the city's two expert witnesses, Dr. Christopher Cenac, Sr., and George Armbruster. Cenac was an expert in the field of orthopedic surgery; Armbruster was an expert in arrest techniques, police procedures, police training, and use of force. As to Armbruster, the district court denied plaintiffs' motion, and Armbruster testified at trial. As to Cenac, the court denied plaintiffs' first motion in part, permitting Cenac's report and testimony generally but prohibiting Cenac from testifying as to plaintiffs' drug use, prior incidents with doctors or law enforcement, or the facts of the present case. Accordingly, Cenac testified only by video deposition. After taking the deposition, plaintiffs moved to exclude it, raising largely the same claims included in their first motion to exclude. The district court denied that motion as untimely and cumulative.
The city moved for summary judgment on all claims. Regarding municipal liability, it contended that plaintiffs had failed to show any evidence on failure to train. Plaintiffs' response raised a new theory of municipal liability: an allegedly facially unconstitutional policy of "stop-and-identify." The court granted summary judgment for the city only on plaintiffs' Monell claims[1] and on the official-capacity claims, reasoning that plaintiffs had established only a single incident, which was insufficient to establish a custom or policy. Plaintiffs' individual-capacity claims-unlawful arrest and excessive use of force-proceeded to trial.
The jury returned a verdict for the officers. For the excessive-force claims, the jury found that plaintiffs had failed to prove (1) an injury; (2) that excessive force caused the injury; (3) and that the excessive force was objectively unreasonable.
*731 For the unlawful-arrest claims, the jury found that plaintiffs had failed to prove that any officer had arrested them without probable cause. Plaintiffs filed a renewed motion for JML or, in the alternative, a new trial. The district court denied that motion, and plaintiffs appeal (1) the denial of JML as to the individual-capacity claims of unlawful arrest and excessive force, (2) the summary judgment as to municipal liability, and (3) the denial of the motion in limine to exclude the expert witnesses.
III.
We start with plaintiffs' motion for JML. Our review is de novo . Heck v. Triche , 775 F.3d 265, 272 (5th Cir. 2014) (citation omitted). We are "especially deferential" to jury verdicts, and "we draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the non-moving party." Id. at 273 (citations omitted). Accordingly, we uphold the verdict "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did," ids="4340537" index="3" url="https://cite.case.law/f3d/775/265/#p272">id. (citation omitted), or "if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings," Am. Home Assurance Co. v. United Space All., LLC , 378 F.3d 482, 486-87 (5th Cir. 2004). Although there was sufficient evidence for the jury to find for the defendants as to excessive force, the unlawful-arrest verdict was predicated on an erroneous legal conclusion.
A.
On the excessive-force claim, the jury specifically found that plaintiffs failed to prove there was an injury or that excessive force caused the alleged injuries. To prevail on a Fourth Amendment excessive-force claim under § 1983, plaintiffs must prove "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." Flores v. City of Palacios , 381 F.3d 391, 396 (5th Cir. 2004). We need only address causation to see that the verdict was supported by sufficient evidence.
First, Johnson alleged injuries to her right arm, right shoulder, and neck, and mental anguish. But after defense counsel impeached her with deposition testimony and introduced her medical records, Johnson admitted that she had suffered from neck pain and right shoulder pain for several years, had sought medical treatment for that pain, and had been receiving treatment for depression and anxiety.
Similarly, Every alleged injuries to her neck and lower back and fear of the Thibodaux Police Department. Yet on cross-examination, the city introduced Every's medical records, which showed that she had sought treatment for neck pain and lower back pain before the arrest. The city also impeached Every's testimony with some of those documents, including instances in which Every called the Thibodaux police for help after the arrest. The jury was thus free to mistrust Johnson and Every and credit the city's claims that their injuries predated their encounter with police. Accordingly, there was ample evidence for the jury to find that plaintiffs had failed to prove a necessary element of their excessive force claims-causation. See Flores , 381 F.3d at 396. Plaintiffs were not entitled to JML on excessive force.
B.
The same cannot be said for most of the unlawful-arrest claims. Plaintiffs sued each of the seven officers, and the jury found for each. It is necessary to examine the actions of the plaintiffs and some of the officers separately.
*732 1.
Every is precluded from seeking damages under § 1983 for her allegedly unlawful arrest because she pleaded no-contest to resisting arrest. Under the favorable-termination requirement, if a judgment in a plaintiff's favor would necessarily imply the invalidity of her conviction, the plaintiff can recover only by showing that the conviction was reversed on direct appeal, expunged, declared invalid by an authorized state tribunal, or called into question by a federal writ of habeas corpus. Heck v. Humphrey , 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
Every's no-contest plea is considered a conviction under Louisiana law. See LA. CODE CRIM. PROC. ANN. art. 552(4) (2017). Accordingly, like an Alford plea, it implicates Heck 's favorable-termination rule.[2] And Every's present unlawful-arrest claim plainly arises from the same facts as her resisting-arrest conviction. Allowing her to recover under § 1983 for unlawful arrest would necessarily imply that any conviction for resisting the arrest was invalid.[3] Finally, there is no evidence that Every's conviction was reversed, expunged, declared invalid, or called into question by a federal court on habeas review. Therefore, Heck 's favorable-termination rule precludes her unlawful-arrest claim.
2.
We turn next to Johnson's claims. Even then, it is necessary to evaluate her claims against each individual officer. First, we cannot find that Johnson was entitled to JML against Sutton, Bourg, and Shaver, insofar as there was sufficient evidence for the jury to find that they had not made an arrest at all. Sutton was the supervising officer and testified that he had not made an arrest; he stated that he came to the scene only to make an independent review of the incident and survey the injuries for a use-of-force report. Such evidence is insufficient to impute liability to a supervising officer.[4]
Shaver testified that she arrived while the other officers were already removing plaintiffs from the vehicle; she then dealt with crowd control until plaintiffs were secured and only patted down Every before she was placed into the police car. Similarly, Bourg testified that he arrived after the arrests were made and when Every had already been placed on the ground beside the truck. He went to Every because she was asking for him, and he began escorting her to the patrol unit when she attempted to flee. Neither Bourg nor Shaver was further involved at the scene.
A seizure is an arrest "if 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates *733 with formal arrest.' " Turner , 848 F.3d at 692-93 (citation omitted). Under that test, a reasonable jury could have found that Johnson was already arrested by the time Shaver or Bourg had any interaction with her.[5] Therefore, a reasonable jury could have found that Bourg, Shaver, and Sutton were not liable for unlawful arrest because they had not, in fact, arrested Johnson.
3.
The remaining officers-Amador, Buchanon, Gaudet, and Thibodeaux-plainly were involved in arresting Johnson because each testified to that effect. Thus, the jury must have decided that those officers made the arrest with probable cause. According to the officers, they had probable cause to arrest Johnson for failing to provide identification, an alleged violation of Louisiana Revised Statute 14:108. That statute requires an "arrested or detained party" to provide identification only when the officer is making "a lawful arrest" or a "lawful detention." LA. STAT. ANN. § 14:108 (2016) (emphasis added).
The statute could not extend more broadly. Under the Fourth Amendment, police officers may not require identification absent an otherwise lawful detention or arrest based on reasonable suspicion or probable cause. See Brown v. Texas , 443 U.S. 47, 52-53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). While officers are free to demand identification in the circumstances of a lawful stop or arrest, they "may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." Hiibel v. Sixth Judicial Dist. Court , 542 U.S. 177, 188-89, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).
The cases cited by the city are not to the contrary. In Pennsylvania v. Mimms , 434 U.S. 106, 109-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Court held that police may require the driver of a vehicle that was lawfully stopped to exit the vehicle during the course of the stop. And in Maryland v. Wilson , 519 U.S. 408, 413-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), the Court extended the rule of Mimms to passengers. But critically, in both cases the Court was careful to articulate that both Mimms and Wilson involved otherwise lawful stops. See Mimms , 434 U.S. at 109, 111 n.6, 98 S.Ct. 330 ; Wilson , 519 U.S. at 410-11, 117 S.Ct. 882. Thus, under both Louisiana law and the Constitution, Johnson was required to provide identification only if she was otherwise lawfully stopped. The officers would have no probable cause to arrest if the request for identification came during an illegal seizure. Accordingly, the verdict contains an implicit legal conclusion: Johnson was lawfully detained when the officers asked for identification.
The city maintains that Johnson was lawfully detained because Amador had a valid justification for the initial traffic stop: to arrest Robertson on an outstanding warrant. We disagree.
When the police stop a vehicle and detain the occupants, they have effected a Fourth Amendment "seizure." United States v. Brigham , 382 F.3d 500, 506 (5th Cir. 2004) (en banc). We treat those traffic stops as Terry stops. Id. Our Terry analysis has two parts. First, we assess whether the initial stop was justified. Id. As the city demonstrates, the initial stop was justified *734 to arrest Robertson, who had an outstanding warrant.
Second, we determine whether "the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Id. The "touchstone" here is "reasonableness," which "eschews bright-line rules [and] instead emphasiz[es] the fact-specific nature of the ... inquiry." Id. at 507 (quoting Ohio v. Robinette , 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) ). Hence, we require that an officer's actions after a legitimate stop be "reasonably related to the circumstances that justified the stop, or to dispel[ ] his reasonable suspicion [that] developed during the stop." Id. A reasonable detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." Id.
Even in the light most favorable to the verdict, the evidence shows that Johnson's detention lasted longer than necessary to effect the purpose of the stop. Amador testified that he stopped the truck because he recognized Robertson, knew that she had an outstanding warrant, and planned to arrest her. And Amador quickly effected that purpose. He advised Robertson that she had an outstanding warrant, handcuffed her, and placed her into custody. Additional units responded, and Amador handed Robertson off to another patrol unit. But Johnson's detention continued.
According to Amador, the passengers were not free to leave "[u]ntil they [were] identified." He testified that, because "they were inside of a vehicle on a traffic stop," "they needed to be ID'd." The other officers agreed. But the officers were not permitted to continue Johnson's detention solely to obtain identification. See Brown , 443 U.S. at 53, 99 S.Ct. 2637. Instead, they must have developed "reasonable suspicion, supported by articulable facts" during the justified portion of the stop or must have made the request because of "the circumstances that justified the stop." Brigham , 382 F.3d at 507.
The evidence supports neither conclusion. The purpose of the stop was to arrest Robertson, who was known to have an outstanding warrant. The identification of Johnson had nothing to do with that purpose; none of the officers suspected Johnson of having a warrant or being connected to Robertson. Nor was there any evidence that would support a finding of reasonable suspicion.
The only evidence the city points to is that Every attempted to get out of the vehicle earlier during the stop and that Johnson and Every were later on their cell phones. But Every then complied with Amador's command to close the door and remain in the vehicle, and the mere use of a cell phone does not establish a reasonable suspicion of criminal activity. More importantly, the officers who asked for Johnson's identification explicitly testified that they had no suspicion of ongoing or future criminal activity. Those officers explained that they asked for identification only because Johnson was already stopped. But again, asking for identification is not itself a reason to prolong a stop.
This case is thus distinguishable from those in which officers developed enough reasonable suspicion to justify detaining passengers for reasons beyond the initial stop. For instance, in Brigham we permitted the continued detention of a driver and passengers after the officer determined that (1) the driver did not own or lease the car, (2) the lessee was not in the car, and (3) the driver's and a passenger's version *735 of the itinerary conflicted.[6] No such emerging facts were present here. The officers tried to identify Johnson merely because she was a passenger. Yet once the officers had effected their purpose for stopping the truck and discovered nothing establishing a reasonable suspicion that Johnson were involved in criminal activity, she should have been free to go.
Therefore, the verdict was predicated upon an erroneous legal conclusion: that Johnson was lawfully stopped when the officers asked for identification. Because she was not lawfully stopped, she committed no crime by refusing.[7] The officers could not have had probable cause to arrest, and the verdict "cannot in law be supported" by the evidence. See Am. Home Assurance , 378 F.3d at 486-87. Accordingly, we remand for consideration of qualified immunity and, if necessary, of damages on Johnson's unlawful-arrest claims against Amador, Buchanon, Gaudet, and Thibodeaux.
IV.
Regarding the municipal-liability claim against the city, we review a summary judgment de novo . Rogers v. Bromac Title Servs., L.L.C. , 755 F.3d 347, 350 (5th Cir. 2014). A district court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a genuine dispute of material fact only where a reasonable jury could look at the evidence and return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
To avoid summary judgment, plaintiffs alleged that the city had a facially unconstitutional policy of "stop and identify," i.e. a policy of unlawfully requiring identification and arresting individuals based on their refusal to provide it. On appeal, plaintiffs re-allege that theory. Yet that theory of municipal liability is absent from the complaint. Instead, it avers only city policies regarding excessive force and says nothing about any policy of unlawful arrest.[8] Plainly, the policy alleged in the complaint is different from the policy relied on at summary judgment. The former contains a failure-to-train theory and is cabined to excessive force; the latter is a supposedly facially invalid policy and deals only with identification requests and unlawful arrests.[9]
Nor did plaintiffs seek leave to amend to add claims of any supposed "stop and identify" policy of unlawful arrests. And although plaintiffs' counsel suggested at oral argument that the "stop and identify" policy was tried by consent, the record belies *736 that. Indeed, after the city was granted summary judgment on municipal liability, plaintiffs' counsel admitted their only remaining claims were the individual-capacity Fourth Amendment claims.
Thus, before even considering the "stop and identify" policy that plaintiffs raise on appeal, we must determine whether a plaintiff may defeat summary judgment by raising a theory of municipal liability that was never pleaded or tried by consent. They may not.[10] It seems plain that, were the case to proceed to trial, plaintiffs would need to amend their complaint to present the "stop and identify" theory of municipal liability. Cf. Katsev v. Coleman , 530 F.2d 176, 179 (8th Cir. 1976) ; FED. R. CIV. P. 15(b). And plaintiffs may survive summary judgment only if "there is sufficient evidence ... for a jury to return a verdict" for them. Anderson , 477 U.S. at 249, 106 S.Ct. 2505. Accordingly, the plaintiffs may not defeat summary judgment on the basis of a theory found nowhere in their complaint, at least without also moving to amend or absent trial by consent. Cf. Katsev , 530 F.2d at 179 ; FED. R. CIV. P. 15(b)(2).
Thus, we may consider only the theory of municipal liability that the district court passed on: the city's alleged policies regarding excessive force and failing to train or supervise regarding the use of force. We agree with the district court that there is nothing in the record to support such allegations, and plaintiffs point to nothing on appeal that would support them. Summary judgment for the city was proper.
V.
Regarding the expert testimony, we review evidentiary rulings "under the deferential abuse-of-discretion standard." Koch v. United States , 857 F.3d 267, 277 (5th Cir. 2017). A district court enjoys "wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." Id. (internal citations and quotations omitted). Even if we identify an abuse of discretion, "the harmless error doctrine applies unless a substantial right of the complaining party was affected." Id .
Plaintiffs maintain that each of the experts was not qualified and that their testimony exceeded their expertise. We disagree.
The court admitted Cenac's reports in part after it credited the city's uncontested assertions that he was board-certified, had practiced as an orthopedic surgeon for nearly forty years, and had qualified as an expert in orthopedic surgery in federal and state courts. Thus, he was qualified, given that his testimony about plaintiffs' longstanding chronic pain was plainly within his expertise.[11] The court also excluded portions of Cenac's report that it found might prejudice and mislead the jury. And it gave explicit parameters for his future testimony. Plaintiffs' second motion to exclude Cenac's video testimony was nearly identical to their *737 first and was deemed untimely by the district court. Nothing in the court's orders was manifestly erroneous.
Similarly, the court found that plaintiffs had failed to support their challenge to Armbruster's testimony or expertise. As the court explained, plaintiffs submitted only a two-sentence memo challenging Armbruster on the ground that his testimony would make findings of law and fact that are within the province of the jury. That memo was insufficient to call into question Armbruster's expertise regarding arrest techniques, police procedures, police training, and use of force. Moreover, the court found that any unfair prejudice was out-weighed by probative value. The order was not manifestly erroneous.
The judgment is REVERSED and REMANDED as to Johnson's unlawful-arrest claims against Stephen Amador, Adrian Buchanan, Jeremy Gaudet, and Paul Thibodeaux. In all other respects, the judgment is AFFIRMED. We place no limitation on how the district court should proceed on remand, and we make no suggestion as to its conclusions.

See Monell v. Dep't of Social Servs. , 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

See Ballard v. Burton , 444 F.3d 391, 396-97 (5th Cir.2006) (applying Heck to Alford pleas); id. at 396 n.3 (favorably citing Watson v. New Orleans City , No. 00-30438, 2001 WL 1268716, at *2 (5th Cir. Oct. 16, 2001) (applying Heck to a Louisiana no-contest plea)).

See Heck , 512 U.S. at 486 n.6, 114 S.Ct. 2364 (identifying that specific situation as an example of what is barred).

"Supervisory officials are not liable under § 1983 for the actions of subordinates on any theory of vicarious liability"; they must have been "personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." Turner v. Lt. Driver , 848 F.3d 678, 695-96 (5th Cir. 2017). "Personal involvement ... generally includes" actions such as giving commands or directions to the arresting officers, but generally does not include purely investigative actions. Id. at 696.

Cf. California v. Hodari D. , 499 U.S. 621, 624-25, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (defining "seizure" as "taking possession" and explaining that "[a] seizure is a single act, and not a continuous fact") (citations omitted).

Brigham , 382 F.3d at 508 (noting that we have "consistently approved a police officer's questioning a driver's travel plans where the driver was not the authorized vehicle lessee or otherwise appeared to lack driving authority").

See Brown , 443 U.S. at 53, 99 S.Ct. 2637 ; La. Stat. Ann. § 14:108 (2016) (criminalizing the refusal to provide identification in the context of lawful stops or arrests).

For example, the complaint says, "The use of force against the Plaintiff was the result of the policy, practice, and custom of the City of Thibodaux to inadequately train, supervise, and discipline law enforcement officers. The inadequate supervision and discipline of police officers by the City of Thibodaux has led to the unnecessary and illegal use of excessive force against African-Americans."

Accordingly, when the city moved for summary judgment, it contended that Johnson and Every had failed to show any evidence on their failure-to-train claim. The court agreed, explaining that plaintiffs "presented evidence on only an isolated incident, which ... is insufficient to establish a custom or policy."

Cf. Crompton-Richmond Co., Inc.-Factors v. Smith , 392 F.2d 577, 577-78 (3d Cir. 1967) (per curiam) (noting that a party could not raise an independent contract theory as a defense to summary judgment when that theory was never pleaded as a defense or counterclaim).

Plaintiffs fault the district court for failing to perform a formal Daubert inquiry, citing Carlson v. Bioremedi Therapeutic Systems, Inc. , 822 F.3d 194 (5th Cir. 2016). But "a district court is not always required to hold a formal Daubert hearing"; often, it must only "articulate its basis for admitting expert testimony." Id. at 201 (citation omitted). The court found that there was no genuine dispute as to Cenac's longstanding qualifications and that his reports were reliable.