# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30811

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2017

Lyle W. Cayce
Clerk

RICKY KOCH; SUSAN KOCH,

      Plaintiffs - Appellees

AMERICAN INTERSTATE INSURANCE COMPANY,

      Intervenor

v.

UNITED STATES OF AMERICA,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, DENNIS, PRADO, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Plaintiff Ricky Koch fell and suffered personal injuries while aboard the *S.S. Altair*, a public vessel owned by the United States and operated by its agents. Koch, a 54 year-old foreman and employee of Economy Iron Works, was inspecting the vessel in connection with his employer's bidding on repair work on the vessel. Koch and his wife, Susan Koch, brought this action in federal district court against the Government under the third-party liability provision of the Longshore and Harborworkers' Compensation Act (LHWCA),

No. 15-30811

33 U.S.C. § 905(b).[1] Following a bench trial, the district court determined that negligence attributable to the Government—failure to provide adequate lighting of a stairwell—was the factual and legal cause of Koch's fall, resulting harm, and permanent disability and awarded the Kochs $2.83 million in damages. The Government filed a timely notice of appeal. *See* FED. R. APP. P. 4(a)(1)(B). This court has jurisdiction under 28 U.S.C. § 1291.

I

A

The Government contends that, prior to his February 2, 2012 accident, Koch had become disabled by his painful chronic osteoarthritis in both his knees, as well as the degenerative disc disease in his cervical spine and carpal tunnel syndrome. Although Koch's preexisting conditions are undisputed, the district court rejected the Government's argument that Koch had been disabled by them prior to his accident. We affirm this factual finding by the district court as not clearly erroneous for the reasons set forth in detail later in this opinion. At this point, in the interest of chronological clarity, we set forth briefly the evidence of Koch's developing osteoarthritic knee and spinal diseases prior to his accident, as follows:

In 2002, Dr. Richard Corales diagnosed Koch as suffering from degenerative disc disease. In 2004, Koch was diagnosed with multiple joint arthritis by Dr. Terry Habig who referred him to a rheumatologist. In 2005, Dr. Merlin Wilson, a rheumatologist, diagnosed Koch with generalized osteoarthritis and concluded that he needed total knee replacement. In

---

[1] The district court had jurisdiction under its admiralty jurisdiction. 28 U.S.C. § 1333. The applicable waiver of sovereign immunity is the Public Vessels Act, 46 U.S.C. §§ 31101–31113.

No. 15-30811

December 2007, Koch saw Dr. Miranne, who recorded that Koch had a history of "progressive lower back pain for many years" and documented, inter alia, carpal tunnel syndrome. In January 2008, Dr. Lucien Miranne performed cervical spine fusion surgery of Koch's C3-4 and C4-5. In January 2009, Koch was seen by Dr. Lockwood Ochsner, who said he considered doing bilateral total knee replacement. In January 2012, Dr. Wilson saw Koch again and noted that he needed total knee replacement surgery "in the worst way."

## B

On February 2, 2012, Koch boarded the *S.S. Altair*, a public vessel in reserve status owned by the United States Maritime Administration. Along with six other contractor representatives, Koch participated in a "walkthrough" of the vessel in order to submit a bid for his company on areas of the vessel in need of repair. The chief engineer of the *Altair* directed the walkthrough. The contractor group eventually arrived at a stairwell leading down to the winch room, a small compartment that housed the vessel's eductor system. The chief engineer flipped the light switch at the top of the stairwell, but the fluorescent lights did not fully illuminate the area. The engineer led the contractor group down the stairwell, which became progressively darker. While some contractors used flashlights to help illuminate their descent, Koch held on to the handrails with both hands. However, he missed the last step in the dark and fell backwards, striking his head, neck, and shoulders on the bulkhead. He sat down while the other contractors inspected the winch room. Koch then continued with the group's walkthrough of the *Altair*. However, Koch did not complete a second walkthrough of another vessel, but instead returned to his office. After filling

3

No. 15-30811

out an accident report, Koch remained in the office for the rest of the day. A colleague drove him home, where his wife found him immobile on a recliner.

Essentially incapacitated and experiencing severe pain in his knees, neck, and back, Koch remained at home, unable to return to work. When his symptoms did not improve after a few days of rest, he went to an urgent care clinic. The doctor at the clinic instructed Koch to follow up with a specialist; Koch saw Dr. Simon Finger, an orthopedic surgeon. Dr. Finger noted Koch's history of osteoarthritis in his knees but concluded that the February 2, 2012 shipboard fall exacerbated his preexisting osteoarthritic conditions and caused the urgent necessity for surgical bilateral knee replacements.

Prior to performing a knee replacement, however, Dr. Finger instructed Koch to see a neurosurgeon for his neck symptoms that had manifested after the fall. Koch saw Dr. Lucien Miranne, a neurosurgeon who had previously performed an anterior cervical discectomy and fusion at his C3-4 and C4-5 vertebrae in his neck in January 2008. Dr. Miranne concluded that Koch herniated his C6-7 disc as a result of the February 2, 2012 fall and aggravated his cervical spondylosis in his C5-6 discs. Dr. Miranne recommended and performed an anterior cervical discectomy and fusion at C5-6 and C6-7 on Koch on August 17, 2012.

Following this cervical spine surgery, Koch had post-surgical complications, including carpal tunnel problems in his hands. Although Koch had mild carpal tunnel prior to the fall, Dr. Miranne noted that the carpal tunnel condition was worsened by Koch's neck problems associated with his C6 and C7 nerve roots. On April 30, 2013, Dr. Miranne performed a right carpal tunnel release on Koch.

4

No. 15-30811

Koch's symptoms, including severe pain in his neck, shoulders, arms, and hands, worsened after the August 17, 2012 surgery. Dr. Miranne concluded that because of Koch's persisting pain and discomfort, additional surgery was required, consisting of a posterior approach cervical fusion.[2] Dr. Miranne explained that he had not used the posterior approach in the first place because it is more painful and usually requires longer hospitalization than the anterior approach. Dr. Miranne recommended that Koch first have and recover from the knee replacements before undergoing the posterior cervical surgery. On July 14, 2014, Dr. Finger performed a right total knee replacement. At the time of trial, Koch was scheduled to have the left knee replacement as soon as he had fully recovered from the first knee replacement. Dr. Miranne also recommended that Koch undergo a left carpal tunnel release.

C

In May 2013, the Kochs filed suit against the Government for damages for past and future medical care, lost wages, and pain and suffering. They alleged that the Government was liable due to its negligence in failing to provide a safe work place and adequate lighting on the vessel. Following a three-day bench trial, the district court determined that the Government's negligence in failing to provide adequate lighting above the stairwell was the factual and legal cause of Koch's accidental fall, his injuries, the exacerbation of his preexisting conditions, and his disability. *Koch v. United States*, No. CIV. A. 13-205, 2015 WL 4129312 (E.D. La. July 7, 2015).

---

[2] Dr. Miranne testified that posterior approach cervical fusion surgery requires removing bone or portions of a herniated disc to relieve Koch's neck and arm pain and the use of mass screws and rods to hold the vertebrae in place and provide stability.

5

No. 15-30811

Koch's supervisor, Robert Barbalich, Jr. of Economy Iron Works, testified that he knew of Koch's health issues prior to the accident, but that they never impacted his ability to work as a foreman and that he did not have mobility issues on the job. Barbalich expected Koch to work for another five to ten years before retiring. Dr. Miranne testified that Koch had returned to work without restrictions following the successful 2008 anterior cervical discectomy and fusion. Dr. Wilson, a rheumatologist, testified that when he saw Koch in January 2012 Koch said that he had worked continuously and was able to perform all of his job duties and daily living activities. Koch testified that prior to the fall he had no plans to have knee replacement surgery and had no limitations or restrictions on account of his knees or neck. Susan Koch testified that prior to the accident Koch was very active at home; he replaced the kitchen cabinets, vaulted the ceiling in their bedroom, mowed the lawn regularly, and tended to their garden. After the accident, Koch could no longer sleep in a normal bed and the couple can no longer enjoy an active social life. She testified that the stress of working full time and caring for her husband had taken its toll on her and their relationship. Koch's treating surgeons, Drs. Miranne and Finger, testified that Koch's fall caused his injuries, exacerbation of preexisting conditions, and disability and that all of his subsequent surgeries were necessitated by that accident. Dr. Finger testified that more likely than not Koch will need revision surgeries to both knees within the next fifteen to thirty years. Dr. Miranne testified that even if Koch had successful knee replacements with Dr. Finger and a successful posterior approach cervical fusion surgery, it is more likely than not that he will never be able to

6

No. 15-30811

return to any type of gainful employment due to the injuries sustained in his fall.

The district court award of damages to the Kochs of $2.83 million, including $1.3 million for Koch's pain and suffering. In its findings of fact, the district court stated:

> Prior to February 2, 2012, and despite multiple pre-existing injuries, Mr. Koch was an active, convivial man who enjoyed going to work. Although he frequently experienced pain while working, particularly in his knees, Mr. Koch performed his work activities with vigor and without restriction since at least 2010. . . . Mr. Koch was equally active at home. He mowed the lawn. He fixed the plumbing. He updated the kitchen cabinets. He removed the bedroom ceiling and reinstalled it. He even undertook to modify the drainage system in his home, which involved digging up the bulkhead, replacing existing pipe, and placing gravel rocks on top of the drain pipe.

*Id.* at *3–4. The district court found that "[a]s a result of the injuries he sustained on February 2, 2012 and the treatment he has received and will receive for those injuries, Mr. Koch will never work again." *Id.* at *3 (footnote omitted).

## II

On appeal, the Government argues that: (1) the district court applied the wrong legal standard applicable to cases in which the injured plaintiff had a diagnosed preexisting medical condition; (2) the district court erred in holding that the accident was the sole cause of Koch's damages; and (3) the district court abused its discretion in limiting the testimony of the Government's expert witness, Dr. William Hagemann, an orthopedic surgeon.

7

No. 15-30811

A

We review de novo the legal determinations of the district court after a bench trial. *Seal v. Knorpp*, 957 F.2d 1230, 1234 (5th Cir. 1992). In determining that the Kochs are entitled to recover for all of Koch's harm and disability, without any discount or reduction because of Koch's preexisting osteoarthritic knee and degenerative spinal conditions, the district court applied the principles set forth in *Maurer v. United States*, 668 F.2d 98, 99–100 (2d Cir. 1997):

> It is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim. The defendant takes the plaintiff as he finds him. *See, e. g., Evans v. S. J. Groves & Sons Co.*, 315 F.2d 335, 347–48 (2d Cir. 1963) (Friendly, J.); *United States Fidelity & Guaranty Co. v. United States*, 152 F.2d 46, 49 (2d Cir. 1945) (L. Hand, J.); *The Jefferson Myers*, 45 F.2d 162 (2d Cir. 1930) (per curiam). A plaintiff's recovery for damages caused by a defendant's wrongful act may not be proportionately reduced because of a preexisting weakness or susceptibility to injury such as an osteoarthritic condition or a weakness caused by a previous injury. *See, e.g., United States Fidelity & Guaranty Co. v. United States*, *supra* (congenital spine defect); *Buchalski v. Universal Marine Corp.*, 393 F. Supp. 246, 248 (W.D. Wash. 1975) (preexisting weakness of lower back from prior injury that had stabilized at a nondisabling level).
>
> However, there are two exceptions to the general rule. First, when a plaintiff is incapacitated or disabled prior to an accident, the defendant is liable only for the additional harm or aggravation that he caused. *Evans v. S. J. Groves & Sons Co.*, *supra*, 315 F.2d at 347. Second, when a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages

8

discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury, but the burden of proof in such cases is upon the defendant to prove the extent of the damages that the preexisting condition would inevitably have caused. *Id.* at 348.

Applying the foregoing principles, the district court concluded that, because the defendant's negligent failure to safely illumine the stairwell was the factual and legal cause of Koch's accidental fall and its disabling consequences, the Government is fully liable for his resulting harm and disability, even though Koch's preexisting conditions made the consequences of the Government's negligence more severe than they would have been for an ordinary victim. The district court found that neither of the exceptions to this general rule articulated in *Maurer* applies in the present case. The court found that the first exception does not apply because Koch was not disabled or incapacitated *before* the accident[3]; and that the second exception does not apply here because the Government did not carry its burden to prove the extent, if any, of the damages that the preexisting conditions would *inevitably* have caused even in the absence of the accident.[4] We see no error in the district court's application of the well-settled principles set forth in *Maurer*.

The Government contends, however, that *Maurer* is inapplicable because it is an "eggshell skull" plaintiff case, and that the "eggshell skull" concept applies only if the plaintiff's preexisting condition was completely latent and had not manifested itself prior to the plaintiff's accident caused by the defendant. This argument is not meritorious. *Maurer* itself involved a plaintiff

---

[3] *See Koch v. United States*, 2015 WL 4129312, *3–4.

[4] *Id.* at *6 ("The evidence presented at trial does not establish that any of the injuries of which Mr. Koch complains were inevitable.").

who suffered from already manifested "preexisting degenerative back condition (osteoarthritis)" and an unspecified injury in a prior accident. 668 F.2d at 99. Moreover, the Government cites no authority for limiting the "thin skull" or "eggshell skull" rule—described often as the "defendant takes the victim as found" rule—to cases involving only latent or unmanifested preexisting conditions. This court and district courts within our circuit have expressed approval and acceptance of the "thin skull," "eggshell skull," or "defendant takes the victim as found" rule without limiting its application to latent or unmanifested preexisting conditions. *See Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 495 (5th Cir. 2002); *Dunn v. Denk*, 54 F.3d 248 (5th Cir. 1995); *Cutchall v. Cal Dive Int'l, Inc.*, No. CV 12-1291, 2013 WL 12107569, at *1 (E.D. La. Apr. 2, 2013); *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 730 (E.D. La. 2009); *Laakso v. Mitsui & Co. USA*, No. CIV. A. 88-2450, 1989 WL 149186, 1990 A.M.C. 635, 645 (E.D. La. Dec. 6, 1989); *Curtis v. Shivers*, 674 F. Supp. 1237, 1239 (E.D. La. 1987).[5]

---

[5] *Henderson v. United States*, 328 F.2d 502 (5th Cir. 1964), the case relied upon by the Government, is inapposite. In that case, the plaintiff, a civilian, was injured when a Government agent negligently backed a truck into him on June 18, 1961. The district court found that plaintiff's preexisting osteoarthritic lumbar condition was aggravated as a consequence of the negligence of the Government but that he suffered little or no pain immediately. Although he did experience some pain beginning in early July, his pain did not become severe and disabling until he suffered a second injury to his back on September 12, 1961, without fault or negligence on the part of the Government. Because the Government was in no way responsible for plaintiff's second, more serious back injury the district court awarded him only $5,000 for his June 18 injury. This court affirmed, stating as a general rule that where there is a subsequent injury, if the subsequent event is attributable to a distinct intervening cause, the wrongdoer is held to be liable only for the original injury. As the district court, after weighing the evidence as a whole, apparently concluded that the aggravation caused by the negligence of the Government in June 1961 was not a contributing factor to the injuries occurring in September 1961, the Court of Appeals concluded that it could not say that the district court's findings and conclusion were clearly erroneous. *Id.* at 505. *Henderson'*s facts are clearly distinguishable from the present case, because here there

No. 15-30811

Indeed, we have found no reported case so limiting the rule. Further, although we are not bound by the major torts treatises or the American Law Institute's Restatement of Torts, it is significant that none of them recognizes such a limitation on the rule. *See, e.g.,* W. PAGE KEETON ET. AL., PROSSER AND KEETON ON TORTS § 43, at 291–92 (5th ed. 1984); DAN B. DOBBS ET. AL., THE LAW OF TORTS § 206, at 711–13 (2d ed. 2011); RESTATEMENT (THIRD) OF TORTS § 31 (AM. LAW INST. 2010). For example, the Restatement (Third) of Torts, § 31 provides that:

> When an actor's tortious conduct causes harm to a person that, because of a preexisting physical or mental condition or other characteristics of the person, is of a greater magnitude or different type than might reasonably be expected, the actor is nevertheless subject to liability for all such harm to the person.

Section 31's Reporter's Note further states:

> Every United States jurisdiction adheres to the thin-skull rule; more precisely, extensive research has failed to identify a single United States case disavowing the rule . . . . The essence of this rule prevents a defendant from seeking to avoid or reduce liability because some characteristic of the plaintiff, however unusual, combines with the tortious conduct of the defendant to produce physical or emotional harm that is greater than might be expected, unusual, or unforeseeable.

*Id.*

For these reasons, we conclude that the district court did not apply the wrong legal standard in this case with regard to Koch's preexisting medical conditions.

---

was a single accident that resulted in totally disabling harm; there was no second accident or intervening injury.

11

No. 15-30811

B

The Government argues that the totality of the medical evidence demonstrates that Koch's preexisting conditions of spinal degenerative disease and osteoarthritic disease of his knees had caused him to become disabled prior to his fall on the *Altair* so that the district court's findings of facts to the contrary are clearly erroneous and should be vacated.[6]

Because a finding of disability *vel non* is a finding of fact, the standard governing appellate review of a district court's finding of disability or lack thereof is that set forth in Federal Rule of Civil Procedure 52(a): "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." The question before us, then, is whether the district court's failure to find that Koch was disabled prior to his accident was clearly erroneous.

The general principles governing the exercise of our power to overturn factual findings of a district court may be derived from the Supreme Court's cases and our own cases. "The foremost of these principles . . . is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the

---

[6] The Government's brief initially states that that the district court erred in holding that the accident was the "sole cause" of Koch's damages. Such an argument is meritless because the district court clearly did not find that Koch's accident was the "sole cause" of his resulting harm and disability. Rather, the district court found that the combination of his accident with its exacerbation of his preexisting conditions was the cause in fact and legal cause of his harm and disability. The somewhat more persuasive argument that the Government makes is that Koch had been rendered disabled by his preexisting conditions before his 2012 accident. This argument, too, is meritless, but it requires that we consider all of the evidence to determine whether the district court clearly erred in finding Koch was not disabled by his preexisting conditions prior to his accident.

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court." *Id.*

Thus "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 573–574 (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). Similarly, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575–76.

Applying the foregoing principles in a review of the entire record in this case does not leave us with "a definite and firm conviction that a mistake has been committed," *see id.* at 573, and so we cannot characterize as clearly erroneous the district court's finding that Koch had not been disabled by his deteriorating spinal condition and his osteoarthritic knee condition prior to his accidental fall aboard the *Altair*. In making its determination, the district court credited the testimony of Koch, his wife, and his supervisor, all of whom

bore witness to the fact that, prior to his accident aboard the *Altair*, Koch was not disabled but was active in his job as foreman, in doing maintenance and repairs at home, and socially. The district court also credited the testimony of Koch's treating physicians, Dr. Miranne, a neurosurgeon, and Dr. Finger, an orthopedic surgeon, who testified that Koch had not been disabled by his preexisting spinal and knee conditions prior to his accident. Dr. Miranne testified that Koch had recovered from a cervical operation he performed on him in 2008, that he had some intermittent symptomatology but was doing well and had returned to work up until his accident. Dr. Miranne concluded from his examinations, MRI readings, and surgery that Koch had sustained a herniated disc at C6-7 in his fall aboard the *Altair*, which aggravated the effects of his preexisting spinal disease and caused it to become totally disabling. Dr. Finger concluded from his examinations that Koch's fall had aggravated his preexisting osteoarthritic knee conditions, painfully causing him to urgently need bilateral surgical knee replacements.[7] Dr. Miranne and Dr. Finger testified that all of the surgeries performed and planned by them, with Koch's consent, subsequent to Koch's fall were necessitated by that accident.

In contrast with Dr. Miranne's findings, Dr. Hagemann, the Government's expert orthopedic surgeon, saw no signs or changes between Koch's MRI films taken before and after the 2012 accident. The radiologist

---

[7] Although the record indicates other doctors had previously diagnosed Koch's preexisting osteoarthritic knee condition and advised him to undergo bilateral knee replacement, Koch testified that he had not planned to have those operations until his 2012 accident; and Dr. Finger stated without contradiction that a physician does not recommend such surgery if the patient chooses to function and to live with his knee pains.

who made the films filed a report to the same effect.  Based on these readings, Dr. Hagemann thought it was unlikely that Koch had received a herniated disc or had been seriously harmed by the 2012 accident.  However, Dr. Hagemann had examined Koch but once, on September 2, 2014, which was after the pretrial surgeries performed by Drs. Miranne and Finger and long after the accident.  No one except Dr. Miranne and Dr. Finger had performed surgery on him.  The district court resolved the conflict in the evidence in favor of the testimony of the treating physicians, Drs. Miranne and Finger.  Considering all of the circumstances and reasons stated, we cannot say that the district court's determination was unreasonable or clearly erroneous.  *See id.* at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

C

Finally, the Government asserts that the district court erred by unfairly limiting the testimony of its expert, Dr. Hagemann, and by crediting the testimony of Koch's treating physicians over that of Dr. Hagemann because of that limitation.  Dr. Hagemann examined Koch once on September 2, 2014, reviewed some of Koch's medical records, and prepared a pretrial expert report expressing his opinion that Koch did not sustain a herniated disc or any serious injury in his accident. Before his pretrial report, Dr. Hagemann had not yet personally reviewed the MRI films but based his opinion on the radiologist's reports of them.  By the time of the trial, however, Dr. Hagemann had reviewed the films himself, and at trial the Government sought to have him testify, in addition to his opinion based on the radiologist's readings, that his opinion that Koch had suffered no new disc herniation or other serious injury in the accident was based on his own comparison of Koch's MRI films before and after the

accident.  The district court sustained the Kochs' counsel's objection to the enhanced testimony on the grounds that it was an improper attempt to amend Dr. Hagemann's pretrial report after the discovery deadline had passed and would improperly allow Dr. Hagemann to testify as to other doctors' reports not included in his own report.  The Government moved to make a proffer of the evidence, and the court stated that it would permit the proffer at the end of the trial.  The Government did not make the proffer, however.

We review the evidentiary rulings of the district court under the deferential abuse-of-discretion standard.  *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).  "District courts enjoy wide latitude in determining the admissibility of expert testimony, and 'the discretion of the trial judge and his or her decision will not be disturbed on appeal unless 'manifestly erroneous.'"  *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (quoting *Eiland* v. *Westinghouse Elec.*, 58 F.3d 176, 180 (5th Cir. 1995)).  Even if an abuse of discretion is found, the harmless error doctrine applies unless a substantial right of the complaining party was affected.  *See Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (5th Cir. 2004).

Having scoured the record, we are satisfied that the district court did not abuse its discretion in ruling to exclude the additional testimony by Dr. Hagemann about his review of the MRI films, particularly in light of the court's offer to allow the Government to make a proffer of it at the end of the trial.  But even if we were to assume, *arguendo*, that the district court erred in its exclusion-with-proffer ruling and did so to the point of abuse of discretion, we would still not reverse the district court's judgment because, under the circumstances, such an error clearly appears to have been be harmless.  It was plain that even without Dr. Hagemann's excluded testimony on the subject

No. 15-30811

that he and the radiologist, based on their reading of Koch's MRI films, differed from Dr. Miranne's findings that Koch sustained a herniated disc at C6-7 and suffered disabling exacerbating trauma as a result of his accident.   But Dr. Miranne's opinion as the treating neurosurgeon who had, inter alia, performed two surgeries on Koch's cervical spine, was based on many other factors as well as his reading of the MRI films.   For these reasons and the others expressed herein the district court's decision to credit Dr. Miranne's testimony over Dr. Hagemann's was not unreasonable or clear error.

For these reasons, the judgment of the district court is AFFIRMED.