# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20631
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2018

Lyle W. Cayce
Clerk

RICHARD NORMAN,

      Plaintiff - Appellant

v.

GROVE CRANES U.S., L.L.C.,

      Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-765

Before STEWART, Chief Judge, and DENNIS and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Richard Norman filed suit against various defendants as the result of injuries sustained during his employment. A jury trial was held and at the close of Norman's case-in-chief, the only remaining defendant, Grove Cranes, U.S., LLC, moved for judgment as a matter of law and the district court granted the motion. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20631

## I.    Facts & Procedural History

On September 6, 2013, Richard Norman sustained injuries while working as a certified rigger for KBR, Inc. at a facility in LaPorte, Texas owned by E.I. DuPont de Nemours ("DuPont").    According to Norman, while performing his job duties on that date, he suffered severe injuries when a crane jib rolled onto him and pinned him against the crane.  DuPont had purchased the Grove RT650E crane ("the Crane") that was involved in Norman's incident from H&E Equipment Services, LLC in February 2012.  The Crane was manufactured and designed by Manitowoc Cranes, LLC.

Norman filed suit in April 2014 alleging various negligence claims against DuPont, H&E Equipment Services, LLC, H&E Equipment Services, Inc. (collectively, "H&E"), Manitowoc Cranes, LLC, Manitowoc Cranes, Inc. (collectively, "Manitowoc"), and later amended his complaint to add Grove Cranes, U.S., LLC ("Grove") as a defendant.  In his complaint, Norman claimed that he had sustained substantial injuries all over his body including his head, neck, back, shoulder, arm, chest, ribs, kidney, and adrenal gland.  Norman also alleged mental anguish and distress and a loss of current and future earning capacity  as  a  result  of  his  injuries.    He  sought  exemplary  damages.

Manitowoc and H&E were eventually dismissed from the suit and the district court granted summary judgment in favor of Dupont.  Thus, the only remaining defendant at the time of the jury trial was Grove.  According to Norman, during the pre-trial discovery period, he requested that Grove "produce actual draft design drawings related to the prior design of the crane at issue and similar Grove cranes."  Grove never produced the requested materials, however, and the discovery period closed. One month later, Norman filed a motion to compel and re-open discovery, which the district court denied.

When the case was tried in May and June 2017, Norman's only remaining claim was for negligent design defect.  Norman's products liability

theory was that the boom extension on the crane was improperly designed because it required the person storing the boom after deployment to stand under the extension, *i.e.*, a suspended load, to do so. Norman's position was that a safer alternative design would allow the person storing the boom after deployment to stand to the side of the extension so there would not be a suspended load above them which could potentially fall and cause injuries to the person underneath, as Norman alleged happened here.[1]

At trial, Norman sought to introduce the expert testimony of Gregg Perkin who was to offer his opinion on a safer alternative design for the Crane. The district court, however, entered an order striking Perkin from testifying as to a safer alternative design on grounds that he did not complete an analysis or form any type of opinion on a safer alternative design or the economic feasibility of one. Instead, the district court allowed Perkin to testify as to a "single point of failure" which, in essence, was testimony that the Crane was dangerous because it required a person to stand under a suspended load to store the boom after deployment.

Since the district court prohibited Perkin from testifying as to a safer alternative design, the question became whether Norman could prove that element of his products liability claim without expert testimony. The district court solicited from Norman a controlling case where a lay person was permitted to testify as to a safer alternative design in a products liability case but Norman failed to produce one. Instead, Norman attempted to use his own testimony to show that a safer alternative design would be a previous model of

---

[1] On appeal, Grove points to portions of Norman's deposition wherein he admits that he "probably didn't" properly install the hitch pin in the rear stowage bracket before removing the pins on the boom nose, suggesting that Norman's failure to do so left the jib unsecured, causing it to fall and push him against the crane, leading to his injuries. Norman does not address this issue on appeal.

No. 17-20631

a Grove crane that did not require a person to stand under a suspended load to store the boom after deployment.

At the close of Norman's case-in-chief, Grove filed a motion for judgment as a matter of law on grounds that Norman had failed to produce competent admissible expert testimony of safer alternative design as required under Texas law in design defect and products liability cases.  The district court granted the motion and the jury was dismissed.  Norman then filed a motion for a new trial.  The district court denied Norman's motion and Norman filed this appeal.

On appeal Norman asserts that the trial court erred in denying his motion for a new trial and in granting Grove's motion for judgment as a matter of law after striking Perkin's opinion on safer alternative design.  Norman complains that the reason he lacked expert testimony on a safer alternative design was because Grove would not produce the discovery documents that Norman had requested.  According to Norman, the district court's decision to strike his sole liability expert constituted an improper sanction that was fatal to his case and, in his own terms, a "death penalty sanction."  In the alternative, Norman advances that the trial court erred in concluding that expert testimony was required to prove the element of safer alternative design. We disagree on all counts.

## II.    Standard Review

"Discovery rulings are committed to the sound discretion of the trial court and will not be reversed on appeal unless arbitrary or clearly unreasonable."  *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 631 (5th Cir. 2014) (internal quotation marks and citation omitted).

When this court reviews an evidentiary ruling that precedes a judgment as a matter of law, the evidentiary ruling is reviewed first, to define the record, and the judgment as a matter of law is reviewed second.  *See Allen v. Pa. Eng'g*

*Corp.*, 102 F.3d 194, 196 (5th Cir. 1996). "Regarding the expert testimony, we review evidentiary rulings 'under the deferential abuse-of-discretion standard.'" *Johnson v. Thibodaux City*, 887 F.3d 726, 736 (5th Cir. 2018) (quoting *Koch v. United States*, 857 F.3d 267, 277 (5th Cir. 2017)). The district court is afforded "wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." *Id.* Our review of a district court's ruling on a motion for judgment as a matter of law is de novo and we apply the same standard as the district court. *Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 578 (5th Cir. 2018) (citing *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014)).

A district court's decision to deny a motion for a new trial is reviewed for abuse of discretion. *Carley*, 890 F.3d at 578 (citing *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998)).

## III.     Discussion

Under Texas law, in a products liability action in which a claimant alleges a design defect, the claimant must prove by a preponderance of the evidence that there was a safer alternative design and that "the defect was a producing cause of the personal injury . . . for which the claimant seeks recovery." *See* Tex. Civ. Prac. & Rem. Code § 82.005(a). The Texas Supreme Court has explained:

> A safer alternative design is one that would have prevented or significantly reduced the risk of the injury, would not substantially impair the product's utility, and was economically and technologically feasible at the time. This design need not be actually built and tested; a plaintiff must show only that the alternative design was "capable of being developed." Importantly, however, the alternative design must not be one that would "under other circumstances, impose an equal or greater risk of harm."

*See Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 7 (Tex. 2015).

This court has recently acknowledged that "[u]nder Texas law, 'expert testimony is generally encouraged if not required to establish a products liability claim.'" *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016). We have also noted that, "expert testimony is crucial in establishing that the alleged design defect caused the injury." *Id.* (holding that the district court was correct in concluding that "without admissible expert testimony, the plaintiffs [could not] raise a genuine issue of material fact concerning key elements of their products liability claim"). Moreover, numerous intermediate Texas courts and federal district courts have granted judgments in favor of defendants where no admissible expert testimony was offered to prove the existence of a safer alternative design. *See Champion v. Great Dane Ltd. P'ship*, 286 S.W.3d 533, 542–43 (Tex. App.—Houston 2009); *Guzman v. Synthes (USA)*, 20 S.W.3d 717, 722 (Tex. App.—San Antonio 1999); *Metropolitan Lloyds Ins. Co. of Tex. v. Louisiana-Pac. Corp.*, No. A-16-CA-00424-SS, 2017 WL 4211025, at *4 (W.D. Tex. Sept. 21, 2017); *Samuell v. Toyota Motor Corp.*, No. MO-13-CV-47, 2015 WL 1925902, at *5–6 (W.D. Tex. Apr. 27, 2015); *Reberger v. Bic Corp.*, No. CIV. A. 700CV005-R, 2001 WL 1143154, at *7 (N.D. Tex. Sept. 25, 2001).

Turning to Norman's first argument, we address whether the district court erred in striking Norman's expert from testifying as to a safer alternative design. We hold that it did not. As the district court stated in its order granting Grove's motion to exclude Perkin's testimony, "Mr. Perkin's deposition makes it clear that he has failed to form an opinion regarding safer alternative designs and economic feasibility." The district court then notes Perkin's responses from his deposition wherein he admits that he has no safer alternative design. The district court goes on to analyze Norman's argument

that Perkin was unable to form an opinion regarding safer alternative design because Grove failed to produce the documents requested, *i.e.*, the "draft design drawings related to the prior design of the crane at issue and similar Grove cranes." The district court expressed its disagreement with this argument pointing out that Norman knew at least 83 days prior to the close of discovery that Perkin needed additional documents to form his expert opinion on safer alternative design but failed to file a motion to compel until a month after the close of discovery. The district court noted that Norman's "failure to seek Court intervention via a motion to compel before the end of discovery shows a lack of diligence in seeking documents [he] now claims are indispensable to his expert's ability to render a required opinion." The district court further observed that Norman had "completely failed to show good cause for reopening discovery."

Our review of the record indicates that the district court was within its sound discretion in denying Norman's motion to compel discovery given the amount of time Norman had to obtain the requested documents prior to the discovery deadline or, at bare minimum, to file the motion to compel production of those documents. *See Haase*, 748 F.3d at 631 (holding that "[d]iscovery rulings are committed to the sound discretion of the trial court and will not be reversed on appeal unless arbitrary or clearly unreasonable"). Additionally, given that Perkin admitted that he had not formed an opinion regarding a safer alternative design, much less its economic feasibility, the district court was clearly warranted in striking Perkin's testimony on the issue of safer alternative design. *See Johnson*, 887 F.3d at 736 (noting that the district court has "wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous").

Finally, on the record before us, we see no merit in Norman's alternative argument that the trial court erred in concluding that expert testimony was required to prove the element of safer alternative design. Norman's argument before the district court, and on appeal before this court, is that expert testimony is not required to prove safer alternative design. Norman suggests that as an experienced rigger, he can provide lay witness testimony as to a safer alternative design for the Grove crane because he is aware of a previous model of a Grove crane where the person storing the boom after deployment were not required to stand under the extension, *i.e.*, a suspended load, to do so.

In granting Grove's motion for judgment as a matter of law, the district court stated:

> [T]here has not been one case cited to this Court on safer-alternative design evidence provided by lay witnesses in a case, either in the Southern District of Texas or another district court in the State of Texas, or by way of the Fifth Circuit, or the Texas—or the Texas Supreme Court, or the United States Supreme Court where lay witnesses have testified for purposes of a design defect as to safer-alternate design in a case involving a crane or any other equipment of that ilk; and obviously I believe that if they had, if such case existed, the Court would have been made aware of it through its own research and, more importantly, through plaintiff's counsel pointing that case out to this Court. The Court concedes that there are cases in which it has been suggested that there are situations in which safer-alternative design could be proven up by lay witnesses. That case where it has occurred hadn't been provided to this Court.

The district court went on to note that the Crane at issue was a complicated piece of machinery and that "[c]rane design and feasibility of safer alternative crane designs is not something within the common experience of the jury." The district court also observed that Norman's lay witness testimony as to safer

alternative design failed to address economic feasibility as required under the applicable law.

Our review of the applicable law and the record evidence reveals that the district court's analysis of this issue was correct given the facts and circumstances of this case—Norman's lay witness testimony was clearly insufficient to carry his burden of proof as to his products liability claim against Grove. *See* Tex. Civ. Prac. & Rem. Code § 82.005(a) (providing that the claimant must prove by a preponderance of the evidence that there was a safer alternative design); *Genie Indust., Inc.*, 462 S.W. 3d at 7 (noting that "a safer alternative design is one that would have prevented or significantly reduced the risk of the injury, would not substantially impair the product's utility, and was economically and technologically feasible at the time"). Additionally, as the district court observed, Norman failed to produce any controlling case law involving safe alternative design offered by a lay witness to successfully prove a products liability case. While the district court may have properly concluded that there is no controlling case law strictly prohibiting a lay witness from testifying as to safer alternative design, Norman did not succeed in doing so here, given that the complex nature of crane design is very likely outside of the common experience of the jury.

In light of these conclusions, we hold that the district court's judgment as a matter of law in favor of Grove was proper. *See Carley*, 890 F.3d at 578.

## IV.     Conclusion

For the aforementioned reasons, we affirm the district court's judgment as a matter of law in favor of Grove. We also affirm the district court's judgment denying Norman's motion for a new trial.