# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2025

Lyle W. Cayce
Clerk

—————————

No. 24-30245

—————————

AIG Specialty Insurance Company,

*Plaintiff—Appellee*,

*versus*

James Agee; Shea Harrelson,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-5410

_____

Before Elrod, *Chief Judge*, and Higginbotham and Southwick, *Circuit Judges*.

Per Curiam:[*]

This is an insurance coverage dispute between former employees of a now bankrupt business and the business's insurer. A state court found in favor of the employees on their breach of contract claim for unpaid wages and commissions. The insurer sought declaratory judgment that it did not owe the amounts of the state court judgment. The district court ruled in favor of

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30245

the insurance company, finding an exclusion in the policy barred coverage. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

From March 2015 through March 2020, American International Group, Inc. ("AIG") issued three successive Employment Practices Liability policies to UTC Laboratories, LLC. James Agee and Shea Harrelson are former employees of UTC. UTC operated a toxicology and DNA testing laboratory, along with related healthcare businesses. UTC marketed and solicited referrals for individuals to undergo pharmacogenomics, toxicology, urine, saliva, and other laboratory testing, then billed and collected from third party payors for the charges for such testing. Agee and Harrelson served as Area Vice Presidents and were paid a base salary, monthly commission, a bonus that corresponded to the quarterly profitability of each employee's area, and a monthly expense and monthly car allowance. Under their respective employment contracts, if UTC terminated Agee and Harrelson without cause, UTC would be required to continue paying them severance pay based on tests received by the labs for their respective accounts through June 30, 2015, which would have otherwise been paid as quarterly bonuses.

In November 2014, Medicare, UTC's principal source of revenue, suspended payments to UTC. As a result, UTC requested, and Agee and Harrelson agreed to, a temporary deferral of payments of their bonuses for the Third Quarter of 2014. Harrelson made "numerous amicable demands" seeking payments due under the employment contracts to no avail. In April 2015, UTC terminated Agee and Harrelson without cause, entitling them to compensation based on all revenue that UTC received for tests ordered by Agee and Harrelson through June 30, 2015. That same month, Agee, acting on behalf of himself and other Area Vice Presidents, emailed UTC's owners

2

"addressing the deferred commissions." Agee and Harrelson sent multiple emails to UTC between April 2015 and March 2017, but UTC failed to pay any of the monthly commissions or quarterly bonuses owed.

In May 2017, Agee and Harrelson filed their first complaint against UTC in the United States District Court for the Eastern District of Louisiana; the suit was dismissed without prejudice for lack of jurisdiction. In September 2017, AIG was notified by email of that lawsuit. In October 2017, Agee and Harrelson filed a petition for damages, penalty wages, and attorneys' fee in a Jefferson Parish Louisiana state court. Agee and Harrelson sought damages for UTC's breach of their employment agreements and failure to pay. They also sought attorneys' fees, statutory penalties, and costs under the Louisiana Wage Payment Act ("LWPA"). *See* LA. STAT. § 23:631. In December 2022, Agee and Harrelson were awarded a combined total of over $3,000,000.

That same month, AIG filed suit in the Eastern District of Louisiana against Agee, Harrelson, and UTC, seeking declaratory judgment that its policy with UTC did not cover the state court judgment. Agee and Harrelson filed a counterclaim for payment, arguing that two specific sections in the policy provided coverage. The parties filed competing motions for summary judgment. The district court denied both motions, finding that summary judgment was inappropriate because unresolved factual questions remained.

The district court conducted a one-day bench trial on December 4, 2023. It found there was no insurance coverage because of an exclusion in the policy for claims based on UTC's breach of a contract. The district court also rejected Agee and Harrelson's argument that a provision of the policy applied that would overcome the exclusion if UTC's liability would have arisen without a breach of contract. Agee and Harrelson timely appealed.

No. 24-30245

DISCUSSION

Following a bench trial, we review a district court's findings of fact for clear error and mixed questions of law and fact *de novo*. *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011). We review a district court's interpretation of an insurance policy *de novo*. *Id.* Under Louisiana law, insurance policies are interpreted using the general rules of contract construction, and the clearly expressed intent of the parties determines the extent of coverage. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007). Insurance policies should be interpreted in a manner that affords, rather than denies, coverage. *Id.* Insurers may limit their liability by imposing reasonable conditions or limitations on their insureds unless those conditions or limitations violate a statute or public policy. *Id.* at 638–39. The insurer bears the burden of proving that an exclusion applies. *Id.* at 639.

On appeal, Agee and Harrelson argue that the district court misinterpreted two key policy provisions, one being the exclusion for claims based on UTC's breach of contract, and the other a so-called "carve-back" provision that provides coverage for claims that would exist independent of the contract. They also seek reversal based on the district court's overruling their objections to certain testimony. We consider each argument.

*I.     Breach of Contract Exclusion*

The policies issued by AIG to UTC include exclusions for loss that arises from UTC's contractual liability. The breach of contract exclusion in the Directors and Officers ("D&O") section of the policy is as follows:

> Solely with respect to this D&O Coverage Section, the Insurer shall not be liable to make any payment for Loss in connection with that portion of any Claim made against an Insured: . . .
> (p) with respect to Coverage B(i) only: . . .

4

(ii) for any actual or alleged contractual liability of the Company under any express written contract or agreement; *provided*, *however*, this exclusion shall not apply to any:

(1) Written Sale Agreement;
(2) Contract Claim Defense Costs Coverage;
(3) Securities Claim; or
(4) liability which would have attached in the absence of such express contract or agreement.

The breach of contract exclusion in the Employment Practices Liability ("EPL") section is as follows:

Solely with respect to this EPL Coverage Section, the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured: . . .
(h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Company under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any Named Entity); *provided*, *however*, this exclusion shall not apply to:

(i) liability which would have attached in the absence of such express contract or agreement; or
(ii) Defense Costs.

The district court found that the exclusion in both sections of the policy operated to bar coverage for the more than $3,000,000 judgment. Agee and Harrelson both signed employment agreements with UTC. Those agreements created contractual liability for UTC. "Loss" under the D&O and EPL sections is defined to include "damages, judgments, settlements, [and] pre-judgment and post-judgment interest." Thus, the judgment constitutes a loss in connection with a claim made against UTC that arose

out of its contractual liability to Agee and Harrelson.  The exclusion in both the D&O and EPL sections of the policy, then, operate to bar coverage.

Present in both exclusions is a provision that could operate to bring a claim based on breach of contract within the realm of coverage. It provides coverage of "liability which would have attached in the absence of such express contract or agreement."  The district court found that the carve-back was inapplicable because the employment agreements "set forth their entitlement to certain commissions and bonuses that make up the [s]tate [c]ourt [j]udgment award."

Agee and Harrelson assert this finding was legal error because the district court erroneously "focused only on the existence of any agreement at all."  They argue that the relevant inquiry is, "if Agee's and Harrelson's employment agreement had not been reduced to writing, as an 'express written contract,' could they still have prevailed under their LWPA claim?"  They argue that "because the LWPA is itself a statutory tort, with no requirement that the liability derive from an express written contract, the exclusion does not apply."

The LWPA is at the center of Agee and Harrelson's arguments.  *See* LA. STAT. § 23:631.  It provides that after "discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment."  § 23:631(A)(1)(a).  Agee and Harrelson insist the statute creates a tort, a favorable label since that might cause an LWPA judgment to avoid the exclusion for contract claims.  This court has rejected such an argument, quoting the Louisiana Supreme Court in doing so: "[T]he employers' failure to pay the full and proper compensation for services provided gives rise to an action for breach of contract for which the remedy is recovery of wages." *Savoie v. Pritchard*, 122 F.4th 185, 193 (5th Cir. 2024)

(quoting *Grabert v. Iberia Par. Sch. Bd.*, 638 So. 2d 645, 647 (La. 1994)). That was so, this court held, even when the claimant asserts that his claims for compensation fall under the LWPA. *Id.*

We explore this argument a little further. Louisiana courts apply a "but for" test to determine whether a breach of contract exclusion precludes coverage when the same factual basis could support a claim for breach of contract and one in tort. *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 257 (5th Cir. 2012); *see also Perniciaro v. McInnis*, 255 So. 3d 1223, 1234 (La. Ct. App. 4th Cir. 2018) (applying the "but for" test). Under a "but for" test, "the injury is only considered to have arisen out of the contractual breach if the injury would not have occurred but for the breach of contract." *Looney Ricks*, 677 F.3d at 256 (quoting *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 202 (3rd Cir. 2004)). "[A] claim for relief cannot be considered to have 'arisen out of' a breach of contract where the legal support for the claim emanates from a source other than contract law." *Id.* at 257. To succeed under the carve-back provision, then, Agee and Harrelson must show that their tort claims are both (1) "separate and distinct and not arising from the breach of contract claim," and (2) "arise from a duty other than the one imposed by the contract." *Perniciaro*, 255 So. 3d at 1234 (quotation omitted).

In *Looney Ricks*, insurers sought a declaratory judgment stating they had no obligation to provide coverage for a copyright infringement claim because the breach of contract exclusion precluded coverage. 677 F.3d at 256. We held that the claim for relief under the federal copyright laws would have existed in the absence of any contract. *Id.* at 257. The copyright infringement claim, then, emanated from a source of law other than contract law and there was coverage. *Id.*

Agee and Harrelson argue that because the LWPA does not require an "express" or "written" contract to recover, liability would have attached absent the employment agreement. To the contrary, UTC had no general duty to pay Agee and Harrelson, at least not one that the briefing has identified. Unlike *Looney Ricks*, the legal support for Agee and Harrelson's claims emanates solely from contract law.

Agee and Harrelson's arguments before the district court and this court center on contract interpretation principles. The employment agreement set forth their entitlement to certain commissions and bonuses that made up the state court judgment award. Agee and Harrelson's claims under the LWPA are derived from and dependent on their employment agreements, and thus the claims for loss were made in connection with their employment agreements.

We find no error in the district court's determination that the carve-back was inapplicable because UTC's liability to Agee and Harrelson would not have existed but for their employment agreements.

## II.    *Post-Trial Relief*

Agee and Harrelson contend the district court erred in denying their post-trial relief. Following the bench trial, the district court issued its findings of fact and conclusions of law, finding that the breach of contract exclusion operated to bar coverage for the claim. Prior to final judgment, Agee and Harrelson moved to correct a mistake under Rule 60(b)(1), to reconsider under Rule 54(b), or to grant a new trial under Rule 59(a). They argued that a November 30, 2023, order by the district court resolved the inapplicability of the breach of contract exclusion, removing it from the issues to be tried. Following oral argument on the motion, the district court denied relief, evaluating the motion under Rule 54(b) because Rules 59(e) and 60(b) apply to final judgments.

Rule 54(b) permits a district court to "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020) (quotation omitted). We review the denial of these motions for an abuse of discretion. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014). A district court does not abuse its discretion by denying a post-trial motion for relief "when the proffered justification for relief is the mistake or carelessness of the party's own counsel." *U.S. Bank Tr. Nat'l Ass'n ex rel. Tiki Series IV Tr. v. Walden*, 124 F.4th 314, 321 (5th Cir. 2024) (quotation omitted). "A party has a duty of diligence to inquire about the status of a case." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993).

Agee and Harrelson's argument centers on a paragraph in the district court's November 30, 2023, order denying AIG's motion for reconsideration following the denial of summary judgment. The paragraph is as follows:

> The Court states here that the breach of contract exclusions in the EPL and D&O sections of the AIG policies do not bar coverage for the state court judgment because coverage exists when liability would otherwise attach absent the agreement. The Court so found that liability would attach absent the agreement by virtue of the LWPA and therefore finds no manifest error of law or fact on this issue.

Agee and Harrelson contend that "[h]ad the district court not written so clearly in its Order [and] Reasons on November 30 that the 'express written contract' exclusion did not apply, and had it instead identified a factual dispute regarding the applicability of the . . . exclusion," they would have addressed it at trial. The trial was held just days later, on December 4, 2023.

We give context. On November 2, 2023, the district court denied both parties' motion for summary judgment. On this issue, the denial explained that "courts appear to treat claims for wages as a violation of a statutory duty imposed by the LWPA and not as a breach of contract." AIG moved for reconsideration and specifically asked the court to determine whether the breach of contract exclusion barred coverage. The November 30, 2023, order denied AIG's motion for reconsideration, finding no reason to disturb its prior denial of summary judgment. The district court directly addressed AIG's concerns with the paragraph in question and found "no reason to disturb its November 2, 2023 Order & Reasons as to the breach of contract exclusion."

It appears to us that the district court changed its view of the effect of the LWPA. A civil rule provides that a district judge's order "that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment." FED. R. CIV. P. 54(b). A trial court has the authority to reconsider and revise a prior ruling "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted). We agree with a prior panel of this court that a district court may exercise this authority *sua sponte*. *Baig v. McDonald*, 749 F. App'x 238, 241 (5th Cir. 2018).

At most, the district court changed its view of the effect of the LWPA from pretrial to posttrial. At trial, he allowed testimony from an AIG witness, over the objection that the court had already ruled against the exclusion, for what amounts to half a page in the transcript about the contract exclusion provision. The AIG witness explained, as AIG had prior to trial, that AIG understood the losses incurred to be "a result [of] or . . . in connection with the breach of the employment agreement. . . . whether that was under the breach of contract or under the Louisiana Wage Payment

Act." The testimony offered no evidence relevant to questions of fact, but instead, as Agee correctly insists in its brief before this court, "offer[ed] only legal conclusions." Accordingly, the district court's perhaps surprising change of view did not create a need to provide an opportunity for other evidence to be introduced.

In ruling on the post-trial motion based on this testimony, the court explained that its pretrial rulings were denials of the two summary judgment motions and that it reserved the issues raised in the dueling motions for trial. The district court was correct in his post-trial ruling that the November 30 explanation regarding a denial of summary judgment did not foreclose introduction of evidence at trial on the issue. The district court did not abuse its discretion by denying post-trial relief.

### III.    *Objection at Trial*

Finally, Agee and Harrelson assert the district court erred when it did not sustain their objection to any testimony regarding a breach of contract. We review a district court's evidentiary rulings for an abuse of discretion. *Koch v. United States*, 857 F.3d 267, 277 (5th Cir. 2017). District courts have wide latitude to determine the admissibility of testimony. *Id.* When an abuse of discretion is found, we apply the harmless error doctrine unless the error affected the complaining party's substantial rights. *Id.*

Agee and Harrelson's assignment of error derives from an order, dated November 30, 2023, entered just days before the trial began on December 4. They contend the breach of contract exclusion was ruled on prior to trial, so the district court should not have permitted this testimony at trial. We observe that the testimony was little more than legal argument about the effect of the exclusion and, by implication, the inapplicability of the LWPA. Our discussion in the previous section applies here as well: the district court was not bound by its earlier statements about the applicability

No. 24-30245

of the exclusion. Even had there been error, we find it to be harmless, as the evidence was simply an opinion about how the exclusion applied.

AFFIRMED.